Jasmine W. Wetherell, Bar No. 288835
JWetherell@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone: 310.788.9900
Facsimile:  310.788.3399

Charles Sipos, *pro hac vice*
CSipos@perkinscoie.com
Mica Klein, *pro hac vice*
MicaKlein@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendant Bulletproof 360, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TIFFNI ALTES, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>BULLETPROOF 360, INC.,<br><br>        Defendant. | Case No. 2:19-cv-04409-ODW-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BULLETPROOF 360, INC.'S MOTION TO DISMISS**<br><br>Date:      August 19, 2019<br>Time:      1:30 p.m.<br>Courtroom: Courtroom 5D<br>Judge:    Hon. Otis D. Wright II |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 2

    A.  The Complaint's Allegations Regarding Bulletproof Products ........... 2

        1.  The Complaint identifies several true statements that are nonetheless alleged to be "misleading" ....................................... 3

        2.  The Complaint identifies several true statements that it alleges violate certain federal regulations .................................. 5

    B.  The Complaint's Allegations Regarding Plaintiff's Purchases ........... 6

III. LEGAL STANDARD .................................................................................... 7

    A.  Standards for Dismissal Under Rule 12(b)(1) ..................................... 7

    B.  Standards for Dismissal Under Rule 12(b)(6) ..................................... 8

IV. ARGUMENT ................................................................................................. 9

    A.  Plaintiff Lacks Article III and Statutory Standing for Her Claims ....... 9

    B.  Bulletproof's Labels Are Not Misleading to a Reasonable Consumer .......................................................................................... 12

        1.  The reasonable consumer standard governs Plaintiff's claims .......................................................................................... 13

        2.  Plaintiff fails to plead facts plausibly showing the challenged statements are false or misleading to a reasonable consumer ................................................................ 14

    C.  Plaintiff Fails to Allege that the Products Are Misbranded Under the FDCA .......................................................................................... 16

        1.  The challenged labeling does not render the Products an "Unapproved New Drug" ....................................................... 17

        2.  Bulletproof Does Not Make Any Unauthorized Nutrient Content Claims ..................................................................... 19

        3.  Bulletproof Does Not Make Any Unauthorized Health Claims ................................................................................... 21

    D.  The Complaint Fails to Allege Facts Sufficient to Satisfy Rule 9(b) ................................................................................................... 22

V.  CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

CASES

*Arabian v. Organic Candy Factory*,
  2018 WL 1406608 (C.D. Cal. Mar. 19, 2018) (Wright, J.) .................... 22, 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 9

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ............................................................................... 9

*Barnes v. Campbell Soup Co.*,
  2013 WL 5530017 (N.D. Cal. July 25, 2013) .................................... 12

*Becerra v. Dr Pepper / Seven Up, Inc.*,
  2018 WL 3995832 N.D. Cal. Aug. 21, 2018), *app. docketed*,
  No. 18-16721 (9th Cir. Sept. 12, 2018) ........................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 8, 9

*Brod v. Sioux Honey Ass'n, Co-op*,
  927 F. Supp. 2d 811 (N.D. Cal. 2013) .............................................. 16

*Brown v. Starbucks Corp.*,
  2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ........................................ 15

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................... 23

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) .......................................... 11, 12

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) .................................. 13

*Cruz v. Anheuser-Busch, LLC*,
  2015 WL 3561536 (C.D. Cal. June 3, 2015), *aff'd*, 682 F. App'x
  583 (9th Cir. 2017) ............................................................................. 12

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Dachauer v. NBTY, Inc.*,
 913 F.3d 844 (9th Cir. 2019) ................................................................. 16

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006) ............................................................................... 7

*Davidson v. Kimberly–Clark Corp.*,
 76 F. Supp. 3d 964 (N.D. Cal. 2014) .................................................... 23

*Ebner v. Fresh, Inc.*,
 838 F.3d 958 (9th Cir. 2016) ................................................................. 13

*Engel v. Novex Biotech, LLC*,
 689 F. App'x 510 (9th Cir. 2017) .......................................................... 16

*Figy v. Frito-Lay N. Am., Inc.*,
 67 F. Supp. 3d 1075 (N.D. Cal. 2014) ................................................... 15

*Green v. Canidae Corp.*,
 2010 WL 11507372 (C.D. Cal. Jan. 29, 2010) ..................................... 11

*Hadley v. Kellogg's Sales Co.*,
 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................. 14

*Hall v. Sea World Entertainment*,
 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ....................................... 11

*Hunt v. Sunny Delight Beverages Co.*,
 2019 WL 1873230 (C.D. Cal. Apr. 9, 2019) .......................................... 12

*In re 5-hour Energy Mktg. and Sales Practices Litig.*,
 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................ 23

*In re iPhone Application Litig.*,
 6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................. 9, 10

*Jones v. Nutiva, Inc.*,
 2017 WL 3617104 (N.D. Cal. Aug. 23, 2017) ....................................... 23

*Joseph v. Kraft Heinz Foods Co., Inc.*,
 691 F. App'x 850 (9th Cir. 2017) .......................................................... 10

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Joseph v. Nordstrom, Inc.*,
    2016 WL 6917279 (C.D. Cal. June 17, 2016)....................................................10

5

6

*Kane v. Chobani, Inc.*,
    2013 WL 5289253 (N.D. Cal. Sept. 19, 2013)...................................................10

7

8

*Kearns v. Ford Motor*
    Co., 567 F.3d 1120 (9th Cir. 2009) ..................................................................22

9

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017)..........................................................................16

10

11

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)................................................................................9, 10

12

13

*Lanovaz v. Twinings N. Am., Inc.*,
    2014 WL 46822 (N.D. Cal. Jan. 6, 2014) .........................................................22

14

15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................7, 8, 9

16

17

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014)..............................................................17

18

19

*Manchouck v. Mondelez, Int'l*,
    2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x
    632 (9th Cir. 2015) .....................................................................................13, 14

20

21

*Nat'l Nutritional Foods Ass'n v. Mathews*,
    557 F.2d 325 (2d Cir. 1977) ............................................................................18

22

23

*Painter v. Blue Diamond Growers*,
    757 F. App'x 517 (9th Cir. 2018)......................................................................13

24

25

*Phillips v. Apple Inc.*,
    2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) .............................................9, 12

26

*Red v. General Mills, Inc.*,
    2015 WL 9484398 (Wright, J.) (C.D. Cal. Dec. 29, 2015)....................................6

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Savage v. Glendale Union High Sch. Dist. No. 205*,
  343 F.3d 1036 (9th Cir. 2003) ....................................................................... 8

*SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*,
  88 F.3d 780 (9th Cir. 1996) ........................................................................... 8

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) ......................................................................... 8

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) ....................................................... 24

*U.S. v. Writers & Research, Inc.*,
  113 F.3d 8 (2d Cir. 1997) ............................................................................. 18

*Vargas v. JP Morgan Chase Bank, N.A.*,
  30 F. Supp. 3d 945 (C.D. Cal. 2014) (Wright, J.) ....................................... 10

*Weiss v. Trader Joe's Co.*,
  2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ............................................. 15

*Whitaker v. Thompson*,
  353 F.3d 947 (D.C. Cir. 2004) ..................................................................... 18

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ....................................................................... 8

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................. 21, 22

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) .................................................................. 8, 12

## STATUTES

21 U.S.C. § 321 .............................................................................. *passim*

21 U.S.C. § 343 ................................................................................. 19, 20

21 U.S.C. § 355 ........................................................................................ 5

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ............. *passim*

**TABLE OF AUTHORITIES**
(continued)

Page

California Consumer Legal Remedies Act, Cal. Civ. Code § 1750.................*passim*

**RULES**

Fed. R. Civ. P. 9(b) ...............................................................*passim*

Fed. R. Civ. P. 12(b)(1) .........................................................*passim*

Fed. R. Civ. P. 12(b)(6) .........................................................*passim*

**REGULATIONS**

21 C.F.R. § 101.13 ...........................................................5, 19, 20

21 C.F.R. § 101.14 ...............................................................6, 21

21 C.F.R. § 340.3 ................................................................17, 19

58 Fed. Reg. 2302–01 ..............................................................20

58 Fed. Reg. 33731-01 ..............................................................21

**OTHER AUTHORITIES**

FDA, Guidance for Industry: A Food Labeling Guide (Jan. 2013),
    https://www.fda.gov/media/81606/download .....................................22

U.S. Const. Art. III...............................................................*passim*

# I.   INTRODUCTION

Plaintiff Tiffni Altes' Complaint, which purports to assert that the labeling and marketing of Defendant Bulletproof 360, Inc.'s Cold Brew Coffees is misleading or unlawful, persistently and thoroughly fails multiple pleading standards.

The Complaint does not allege facts to support standing under Article III of the U.S. Constitution. It fails to plead statutory standing under California's Unfair Competition Law ("UCL") or Consumer Legal Remedies Act ("CLRA"), the Complaint's only causes of action. It posits that certain statements are misleading based on nonsensical interpretations of the products' labels. For example, it alleges that references to the fact that these Cold Brew Coffees contain highly refined oil and grass-fed butter—ingredients that common-sense dictates are sources of fat— nonetheless somehow imply that the products are *low* in fat. And it asserts that statements regarding the nutritional benefits of the product render it a "drug," even though this is plainly contrary to the language of the statutes and regulations applicable to drugs and ignores the self-evident fact the products are food. Dismissal of the Complaint on multiple grounds is therefore warranted.

*First*, the Complaint fails to allege facts to support the "causation" element of Article III standing. In cases involving alleged mislabeling of consumer goods, this aspect of Article III standing requires Plaintiff to allege she relied on the purportedly misleading or unlawful claims, such that her harm was "caused" by that reliance. The Complaint makes no attempt whatsoever to meet this standard. There is no indication that Plaintiff relied on *anything* Bulletproof said in its labeling or marketing of the products. Indeed, the Complaint does not even accurately describe the labels at issue. This pleading failure also necessarily means that Plaintiff lacks statutory standing under the UCL and CLRA, as this same reliance requirement applies to these individual causes of action, too.

*Second*, the labeling claims that the Complaint challenges as misleading fail

on the merits because they do not allege facts sufficient to show that a "reasonable consumer" would be misled by that labeling. The statements the Complaint challenges, such as the fact that the coffee in Cold Brew Coffees is screened to remove certain toxins, and that the products contain oil, are indisputably true. Moreover, the allegations of deception as to these statements are based on utterly implausible interpretations of the labeling—*e.g.*, that a reasonable consumer interprets the fact that Bulletproof screens its coffee to remove toxins as an assertion that non-Bulletproof coffee is bad for you, or that references to oil and butter mean that Bulletproof Cold Brew Coffee is *low* in fat.

*Third*, the Complaint's unlawful claims depend on an argument that Bulletproof Cold Brew Coffee, a food, is nonetheless subject to regulation as a drug. But none of the statements challenged indicate that the products are intended for use in the diagnosis, cure, treatment, or prevention of any disease, as FDA's "drug" regulations require. Likewise, the Complaint alleges that the products bear unauthorized or unapproved nutrient content or health claims, which are regulations applicable to foods. But a plain reading of the statutes and regulations Plaintiff relies upon reveals that none of the challenged statements meet these criteria.

*Fourth*, the Complaint fails to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). The Complaint *per se* does not allege "what" Plaintiff believes is false, because she does not allege reliance on any Bulletproof Cold Brew Coffee marketing or labeling. Nor does the complaint satisfy the "how" or "why" elements of the standard, because Plaintiff does not allege "why" she believes any such claims are false and misleading, or "how" she came to that conclusion if so.

For these reasons, the Court should dismiss Plaintiff's Complaint.

## II.   FACTUAL BACKGROUND

### A.   The Complaint's Allegations Regarding Bulletproof Products

Defendant Bulletproof manufactures and markets the products at issue: (1) Bulletproof Cold Brew Coffee; and (2) Bulletproof Cold Brew Coffee + Collagen

Protein. Compl. ¶ 3. The products are pre-packaged ready-to-drink coffees that come in several flavor varieties, totaling seven products (collectively, the "Products"). *Id.* ¶¶ 11-12. As the Complaint acknowledges, and the labels plainly and repeatedly disclose, the Products contain—in addition to coffee—a blend of grass-fed butter and refined coconut oil. *Id.* ¶ 13; *see also* Declaration of Michael Campi in Support of Motion to Dismiss ("Campi Decl.") ¶¶ 3-5, Exs. A & B (attaching complete copies of the Products' labeling).

The Complaint asserts that eight statements on the Products' labels are either allegedly misleading or purportedly violate federal regulations. *Id.* ¶¶ 11-12 (challenging the following statements: (1) "Rainforest Alliance Certified"; (2) "BRAIN OCTANE OIL"; (3) "Fuel to Sustain You Mind and Body"; (4) "0g Sugar"; (5) "Lasting Energy"; (6) "Fewer Cravings ¶ Brain Octane Oil Powers Your Brain and Curbs Snack Attacks"; (7) "It's clean coffee certified to be free of 27 energy-sapping toxins, plus grass-fed butter and Bulletproof Brain Octane Oil"; and (8) "15g of Collagen Protein Pack a Beautiful Punch"); *see also* Campi Decl. ¶¶ 3-5, Exs. A & B. The Complaint likewise identifies four statements on the Bulletproof website as "unauthorized" under federal law. Compl. ¶ 14 (identifying statements); *id.* ¶ 14 (alleging website statement is "unauthorized").

As discussed below, however, the Complaint fails to allege any of the challenged statements are false and otherwise cites inapplicable regulations to assert that certain statements are purportedly "unauthorized."

### 1.   The Complaint identifies several true statements that are nonetheless alleged to be "misleading"

*First*, the Complaint points to the statement appearing on some (but not all) versions of the Products' labels that Bulletproof's coffee "beans are farmed, screened, and tested to be free of 27 common toxins to keep you mentally and physically feeling your best." Compl. ¶ 17. There is no allegation that this statement is false. To the contrary, the Complaint acknowledges that mycotoxins are present

in coffee beans, citing a study in which 89% of the coffee samples analyzed by researchers were contaminated by mycotoxins. Compl. ¶ 18 & fn. 3.

Instead, Plaintiff alleges this statement is misleading because it purportedly implies that the Products are a "healthy alternative to regular coffee" or that "consuming regular coffee results in health risks." Compl. ¶¶ 15, 19. The Complaint does not point to any facts to substantiate the notion that by truthfully describing the Products as free of certain toxins, the label caused Plaintiff (or anyone else) to form the impression that non-Bulletproof coffee is unhealthy.

*Second*, the Complaint alleges that the label statement that consuming the "BRAIN OCTANE OIL" in the Products will lead to "fewer cravings," "curb[] snack attacks," and "power your brain" is misleading. Compl. ¶ 20. Here again, the Complaint does not allege that this statement is false. Instead, the Complaint points to the fact that the Products contain saturated fat. *Id.* ¶ 21.

There is no allegation of fact, however, that the Products' saturated fat content has any bearing on the Products' ability to reduce cravings—or that Plaintiff or anyone else interpreted these "fewer cravings" or "power your brain" references as an affirmation that the Products are fat-free. Nor do the labels themselves support this inference: The Products' labels consistently and prominently state on their front panel that they contain "GRASS-FED BUTTER" and "BRAIN OCTANE OIL," alerting consumers to the fact they contain fat. Campi Decl. ¶¶ 3-5, Exs. A & B. The presence of these ingredients is declared for a second time on the Products' ingredient deck, along with the Nutrition Facts Panel's disclosure of the exact amount of saturated fat in the Products. *Id.*

*Third*, the Complaint alleges that a "Rainforest Alliance Certified" insignia on the labels is misleading. Compl. ¶ 48. The Complaint conclusorily alleges that the "Rainforest Alliance website reveals that neither Defendant nor the Bulletproof Cold Brew products are certified by the Rainforest Alliance." *Id*. But the Complaint does not allege the Rainforest Alliance website contains a complete list of all

companies and products certified to bear the organization's seal.

### 2. The Complaint identifies several true statements that it alleges violate certain federal regulations

Next, the Complaint alleges that various statements on Bulletproof Products' labels or on its website purportedly violate FDA regulations.

*First*, Plaintiff alleges certain statements have the effect of rendering the Products an "unapproved new drug." *See* Compl. ¶ 24 ("Fewer Cravings [¶] BRAIN OCTANE OIL Powers Your Brain and Curbs Snack Attacks"); ("BRAIN OCTANE OIL Completely flavorless and totally satisfying, this oil is extracted from the most potent part of the coconut. It gives your body what it needs—efficient high-energy fuel to power your body.") ("Our cold brew packs a punch. Made with clean beans and infused with Brain Octane® Oil and grass-fed butter, this zero-sugar cold brew gives you enough energy and focus to feel like a boss all day long."). Plaintiff alleges that these statements violate 21 U.S.C. § 355(a)—an FDA regulation prohibiting the introduction of unapproved new drugs into interstate commerce—despite the fact the Bulletproof Products are indisputably food products. Compl. ¶¶ 24-27.

*Second*, the Complaint alleges that the "0 Sugar" statement on the Products' label violates 21 C.F.R. § 101.13(h)(1)—a regulation that, despite the Complaint's earlier allegations regarding the Products being classified as a "drug," only applies to food—because the labels do not contain additional language referring to the fact that the Products contain fat. Compl. ¶¶ 36-38. Here again, it is indisputably true that the Products *do* contain "0g Sugar." *See* Compl. ¶¶ 11-14; Campi Decl. Exs. A & B. Moreover, this "0g Sugar" statement appears directly adjacent to language identifying "oil" and "GRASS-FED BUTTER" as among the Products' principal ingredients, both of which are fat-rich foods. There is no allegation that Plaintiff interpreted this "0g Sugar" statement to mean the Products are fat-free.

*Third*, the Complaint alleges that the following statement is an unauthorized

"health claim" under federal regulations: "GRASS-FED BUTTER: Butter from grass-fed cows is higher in butyrate, a fatty acid that aids in digestion as well as Vitamin K2, which helps push the calcium to your bones—not your arteries." Compl. ¶ 40 (citing 21 C.F.R. § 101.14(a)(1)). "Health claims" are defined in §101.14(a)(1) as those that "characterize the relationship of any substance to a disease or health-related condition." *Id.* Thus, the regulation applies only to statements addressing a "disease or health-related condition." Moreover, by its plain language, the regulation applies only to statements on the "label or in labeling" of a food. *Id.* The statement challenged by the Complaint here appears on a Bulletproof website, not any Product label. Compl. ¶¶ 14, 41.

## B.   The Complaint's Allegations Regarding Plaintiff's Purchases.

The Complaint alleges Plaintiff Tiffni Altes "purchased Bulletproof Cold Brew Coffee at least twice in the past two years" at a California grocery store. Compl. ¶ 51.[1] This is the full extent of Plaintiff's allegations regarding her purchases or her alleged deception.

Thus, the Complaint does not allege Plaintiff ever saw, read, reviewed, or relied on any of the various statements challenged in the lawsuit—whether on the Products' labels or on the Bulletproof website (and her allegation that she purchased the Products at a supermarket, Compl. ¶ 51, is inconsistent with the notion that she relied on any online marketing material in connection with those purchases). She does not allege that she believed any of those statements have the meaning the Complaint ascribes to them. She does not allege which of the seven

---

[1] This action is one of three food labeling class actions that Ms. Altes has filed in this District over a roughly one-month period, all brought by the same Plaintiff's counsel Mr. Weston. *Tiffni Altes v. Greenbrier Int'l, Inc.*, Case No. 2:19-cv-03011-SVW-FFM (filed Apr. 18, 2019); *Tiffni Altes v. Star Brands N. Am., Inc.*, 2:19-cv-04399-JAK-AS (filed May 21, 2019). As the Court is aware, this is not Mr. Weston's first association with a serial class litigant. *See Red v. General Mills, Inc.*, 2015 WL 9484398, at *5 (Wright, J.) (C.D. Cal. Dec. 29, 2015) (dismissing putative class action regarding trans fat labeling on Article III standing grounds, noting that Plaintiff's prior litigation regarding food labeling raised inference that any Article III injury she suffered was self-inflicted).

varieties of the Products she purchased. In place of these allegations, the Complaint merely asserts that "Plaintiff would not have purchased Bulletproof Cold Brew products had she known that they were unlawfully labeled, misbranded, contained false claims, and an unapproved new drug." *Id.* ¶ 52.

Moreover, the Complaint's own description of the Products' labels contradicts any inference that Plaintiff saw or relied on those labels. The Complaint alleges that "each flavor [of the Products] includes the following claims on the label," and then goes on to identify seven specific claims that purportedly appear on the labels. Compl. ¶ 11; *see also id.* ¶ 13 (alleging that the Product labels "appear as follows" and then piecing various label images together). Yet, the actual labels contradict the veracity of this allegation. For example, the "0g Sugar" statement did not appear on Product labels carrying the claim that the Products were free of toxins. *See* Campi Decl. ¶¶ 3-5, Exs. A & B. Similarly, the image depicted on the right-hand side of the page of the Complaint (page 5, lines 1-16) is from a Product label that does *not* contain the image depicted on page 5 lines 18-28. *Id.* Exs. A & B. So, the Products' labels do not "appear" as they are depicted in the Complaint.

Based on these allegations and those described in Section II(A), above, the Complaint asserts two causes of action: (1) unfair, unlawful, and fraudulent conduct in violation of California's UCL, Cal. Bus. & Prof. Code § 17200; and (2) violation of California's CLRA, Cal. Civ. Code § 1750.

### III.   LEGAL STANDARD

**A.   Standards for Dismissal Under Rule 12(b)(1)**

Under Article III of the U.S. Constitution, federal courts may decide only "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006).

For a plaintiff to qualify for Article III standing, (1) the plaintiff must have suffered an actual, concrete, and particularized injury in fact; (2) there must be a causal connection between the alleged injury and the challenged conduct such that

the injury is fairly traceable to the conduct complained of; and, (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The party invoking federal jurisdiction has the burden of establishing these three elements. *Id*. at 561. If a plaintiff lacks Article III standing, federal courts are without subject matter jurisdiction and the action must be dismissed. Fed. R. Civ. P 12(b)(1).

When raising a factual challenge to subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may present affidavits or other evidence outside the pleadings without converting the motion to one for summary judgment. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court does not presume the truth of the complaint's allegations under such circumstances, and the burden then falls on the plaintiff to establish—through affidavits or other evidence—that the Court has subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). If the plaintiff fails to carry that burden, the action must be dismissed. *St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989) (affirming Rule 12(b)(1) dismissal based on defendant's submission of evidence disproving jurisdiction under Article III).

## B.    Standards for Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest[]," and not merely be consistent with, the claimed wrongful conduct. *Id.* at 557. The court may dismiss a complaint as a matter of law for (1) "lack of a cognizable legal theory"; or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).

While factual allegations are assumed true, the plaintiff must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is improper to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III and Statutory Standing for Her Claims

As noted above, Article III standing requires a plaintiff to plausibly allege: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) redressability. *Lujan*, 504 U.S. at 560-62; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

The same is true for UCL and CLRA claims: A complaint must allege facts sufficient to establish Article III standing in order for the plaintiff to have statutory standing to assert claims brought under these statutes. *See Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) ("[T]o establish Article III *and statutory standing* Plaintiffs must show an injury in fact that is causally linked to [the defendant's] alleged misrepresentations and omissions.") (emphasis added).

In UCL and CLRA cases, the causation element imposed by both Article III and statutory standing requires the plaintiff to plausibly allege actual reliance on the defendant's purported misrepresentation. *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) ("[F]or purposes of standing under the CLRA and UCL, a showing of causation requires a showing that Plaintiffs actually relied on [defendant's] alleged misrepresentations . . . Plaintiffs must [also] establish actual reliance on [the defendant's] alleged misrepresentations to demonstrate causation for purposes of Article III standing."); *see also Kwikset Corp.*, 51 Cal. 4th at 326-27 ("a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her

UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions'"); *Joseph v. Nordstrom, Inc.*, 2016 WL 6917279, at *3 (C.D. Cal. June 17, 2016) ("under the CLRA, a plaintiff must plead that he or she suffered economic injury through actual reliance on the defendant's allegedly deceptive practices.").[2]

Thus, a failure to allege reliance mandates dismissal for lack of Article III and statutory standing. *Joseph v. Kraft Heinz Foods Co., Inc.*, 691 F. App'x 850 (9th Cir. 2017) (upholding district court's dismissal of UCL claims where plaintiff "failed to allege facts sufficient to show that he relied on the absence of a country of origin marking on defendants' cashew products in making his purchases"); *In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015 (dismissal proper under Article III for lack of statutory standing unless plaintiff "actually relied on the misrepresentations"); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *7-11 (N.D. Cal. Sept. 19, 2013) (dismissing UCL and CLRA claims due to lack of reliance and thus lack of Article III and statutory standing).

Here, the Complaint lacks any allegation that Plaintiff relied on the challenged language on the Products' labels, or on any Bulletproof website. *See generally* Complaint. Indeed, Plaintiff does not even allege that she read these claims, much less relied on them for her purchasing decision. *Id*. Plaintiff makes just one allegation concerning the facts of her purchase as it pertains to Bulletproof, alleging that she "suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising." Compl. ¶ 53.

But this is not an allegation that Plaintiff relied on *anything* in Bulletproof's

---

[2] Where, as here, a claim arises from an alleged misrepresentation or deception, this reliance requirement applies to *all prongs* of the UCL (whether unlawful, fraudulent, or unfair). *Kwikset*, 51 Cal. 4th at 326 n.9 ("[The cause requirement] applies equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception."); *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 953 (C.D. Cal. 2014) (Wright, J.) ("Under the UCL's unlawful prong, a plaintiff must show actual reliance only if the unlawful conduct is based on fraud or misrepresentation.").

Product labels or its websites in making her purchase. Indeed, allegations indistinguishable from those in ¶ 53 of the Complaint have been deemed inadequate to plead reliance. *Compare Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947 (S.D. Cal. 2007) ("Plaintiff also makes several allegations that 'Plaintiff Cattie and members of the Class have been injured in their money or property as a result of Defendants' [false advertising] as set forth in this Complaint.' These, however, are conclusory and do not adequately allege reliance.") (quoting complaint), *with* Compl. ¶ 53; *see also Hall v. Sea World Entertainment*, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015) ("[T]he complaint does not allege that the named plaintiffs actually saw or read *any* advertising or statements made by [defendant] prior to purchasing…") (emphasis in original); *Green v. Canidae Corp.*, 2010 WL 11507372, at *6 (C.D. Cal. Jan. 29, 2010) ("The Court concludes that [plaintiffs'] vague allegations do not sufficiently indicate that they read and relied on the packaging of the [product] they used.").

The failure to plead reliance is particularly acute in this case: The Complaint describes Bulletproof Product labels that do not exist, thus making it impossible that Plaintiff could have "relied" on this imagined label. As to the language on the Products' labels, the Complaint alleges that "[e]ach flavor includes the following claims on the label." Compl. ¶ 11. Yet, no Bulletproof Product label carried all of these various claims at any given time. *See* Campi Decl. ¶¶ 3-5, Exs. A & B. So, the "0g Sugar" statement never appeared on the same label as the statement "It's clean coffee certified to be free of 27 energy-sapping toxins." *Id*. The same is true of ¶ 13 of the Complaint, which alleges that "the product label appears as follows" and then depicts a series of images. What "follows" is an amalgamation of screenshot images from different Products, presenting a label that never existed. *Id.*; Campi Decl. ¶¶ 3-5, Exs. A & B.

Thus, the reasonable inference drawn from the Complaint is that Plaintiff appears not to have any particular Bulletproof label in mind at all, as the Complaint

describes a label different than what was actually sold to consumers. *Cattie*, 504 F. Supp. 2d at 947 ("The possibility that Plaintiff did not rely on the allegedly false advertising when making her purchase is thus more than purely theoretical."); *see also Hunt v. Sunny Delight Beverages Co.*, 2019 WL 1873230, at *3 (C.D. Cal. Apr. 9, 2019) ("The labels on the Products that Plaintiffs purchased are the only labels that matter."); Campi Decl. ¶¶ 3-6. This evidence regarding the Products' labels—which the Court is free to consider for a Rule 12(b)(1) challenge like that presented here, *Wolfe*, 392 F.3d at 362—further corroborates that this Plaintiff has not plausibly alleged reliance.

Plaintiff's failure to allege reliance means that she cannot satisfy the "causal connection" requirement of Article III, nor the causation requirement for statutory standing under the UCL and CLRA. Dismissal under both Rule 12(b)(1) and 12(b)(6) is therefore proper. *See Phillips*, 2016 WL 1579693, at *7.[3]

## B.   Bulletproof's Labels Are Not Misleading to a Reasonable Consumer

Plaintiff's (fraudulent and unfair) UCL and CLRA claims also fail on the merits because none of the statements challenged are misleading to a reasonable consumer. *See* Compl. ¶¶ 11-14. The claims challenged are, instead, factually accurate descriptions about the Products. Moreover, the Complaint does not allege any facts to indicate how and why reasonable consumers were misled by these

---

[3] While the Product labels at issue are admissible as part of the Rule 12(b)(1) factual challenge to standing, they are also separately admissible as judicially noticeable, because the Product labels have been incorporated by reference in the Complaint. *See*, *e.g.*, *Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, at *1 n.3 (C.D. Cal. June 3, 2015), *aff'd*, 682 F. App'x 583 (9th Cir. 2017) (taking judicial notice of the Bud Light Lime-A-Rita's labels and packaging because "[p]laintiffs' complaint is premised on the representations affixed on these labels"); *Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *3 (N.D. Cal. July 25, 2013) (taking judicial notice of copies of Campbell's "100% Natural" soup labels). Thus, the labels are properly part of the Court's consideration of Bulletproof's Rule 12(b)(6) arguments for dismissal as well. *Id.* Rule 12(b)(6) is formally the basis for lack of statutory standing, while Rule 12(b)(1) is the basis for lack of Article III standing. So, to avoid uncertainty as to any resulting dismissal, Bulletproof has filed a Request for Judicial Notice as to the Products' labels setting forth authority establishing that the labels may be considered by the Court under *both* a Rule 12(b)(6) and 12(b)(1) analysis.

1    claims into drawing any incorrect inference about the Products.

2         1.    **The reasonable consumer standard governs Plaintiff's claims**

3         To state a claim for relief under the fraudulent or unfair prongs of the UCL

4    and the CLRA, a plaintiff must plausibly allege the conduct at issue is likely to

5    deceive a "reasonable consumer." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir.

6    2016). "Meeting the reasonable consumer standard] requires more than a mere

7    possibility that [the] label might conceivably be misunderstood by some few

8    consumers viewing it in an unreasonable manner. Rather, the reasonable consumer

9    standard requires a probability that a significant portion of the consuming public or

10   of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

11        Where a complaint fails to plausibly allege that a "reasonable consumer"

12   would be misled by the labeling at issue, courts may—and frequently do—dismiss

13   the complaint at the pleading stage. *See, e.g*., *Painter v. Blue Diamond Growers*,

14   757 F. App'x 517, 519 (9th Cir. 2018) ("[Plaintiff's] complaint does not plausibly

15   allege that a reasonable consumer would be deceived into believing that

16   [defendant's] almond milk products are nutritionally equivalent to dairy milk based

17   on their package labels and advertising."); *Chuang v. Dr. Pepper Snapple Grp.,*

18   *Inc.*, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) (dismissing complaint

19   where plaintiff failed "to point to any false statements" carried on defendants' fruit

20   snack packaging).

21        Dismissal under this standard is appropriate where the complaint offers a

22   strained and implausible interpretation of the challenged labeling claim or

23   statement, *see Becerra v. Dr Pepper / Seven Up, Inc*., 2018 WL 3995832, at *4–7

24   (N.D. Cal. Aug. 21, 2018), *app. docketed*, No. 18-16721 (9th Cir. Sept. 12, 2018)

25   (dismissing complaint with prejudice under the "reasonable consumer" standard

26   where the complaint failed to "allege facts that plausibly support that the reasonable

27   consumer would be deceived by the 'diet' label"); *Manchouck v. Mondelez, Int'l*,

28   2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th

Cir. 2015) (dismissing with prejudice because no reasonable consumer would understand "made with real fruit" to exclude fruit puree), or where the plaintiff challenges a factually true statement, *Hadley v. Kellogg's Sales Co*., 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017) (dismissing complaint with prejudice where challenged claim "MADE WITH Real Fruit" is a factually true statement).

### 2. Plaintiff fails to plead facts plausibly showing the challenged statements are false or misleading to a reasonable consumer

The Complaint challenges three statements as allegedly false or misleading: (1) that the Products are made with coffee that is "tested to be free of 27 common toxins," (2) that the Products contain "BRAIN OCTANE OIL," the consumption of which will result in "fewer cravings," "power your brain," and "curb[] snack attacks," and (3) an insignia indicating that the Products are "Rainforest Alliance Certified." Compl. ¶¶ 17-20, 48. The Complaint does not plausibly allege, however, that any of these statements are misleading to a reasonable consumer.

*First*, the Complaint alleges that the claim "free of 27 common toxins" communicates an implied message that "consuming regular coffee results in health risks." Compl. ¶ 18. But the Complaint does not plead facts to indicate that even Plaintiff—let alone a "reasonable consumer"—would interpret a factual statement that the Products are screened to remove toxins as communicating that "regular coffee" is unhealthy. *Becerra*, 2018 WL 3995832, at *4–7 (dismissing on "reasonable consumer" grounds where complaint was based on unwarranted inferences about interpretation of disputed labeling terms). Likewise, there is no allegation that this statement is false, thus bringing it within the ambit of true statements that fail to satisfy the "reasonable consumer" standard. *Hadley*, 243 F. Supp. 3d at 1093. Indeed, the Complaint affirmatively acknowledges that toxins are, in fact, present in coffee beans. Compl. ¶ 18.

*Second*, the labels truthfully state that the Products contain "BRAIN OCTANE OIL," an ingredient derived from highly refined coconut oil. *See* Campi

Decl., Exs. A & B; *see also* Compl. ¶ 13. The labels go on to state that consuming this ingredient helps result in "fewer cravings," "curb[] snack attacks," and "power your brain." *Id*. The Complaint alleges that this language is misleading because the Products contain saturated fat. Compl. ¶ 20.

But no reasonable consumer would interpret the phrase "BRAIN OCTANE OIL" to mean "absence of saturated fat." Indeed, this speculative assertion is particularly strained because the very claim challenged *identifies the food as containing oil, which itself consists principally of fat, as among its principal ingredients*. Moreover, the statement "BRAIN OCTANE OIL" appears consistently beside a prominent labeling statement that the Products also contain "GRASS-FED BUTTER."

So, it is utterly implausible to allege that consumers interpret an express reference to a fat-rich ingredient like oil, alongside another express reference to "GRASS-FED BUTTER," as communicating a message that the Products are low in fat. *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) (finding that it was "utterly implausible that [plaintiff] or reasonable consumers would see an undisputedly true statement about [sugar or protein] and then draw conclusions about other totally unrelated nutritional characteristics . . . or conclude the Products 'made only positive contributions to a diet….'").

The "reasonable consumer" standard assumes, properly, that food purchasers exercise common sense when evaluating statements on food labels. *Brown v. Starbucks Corp.*, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) (applying "common sense" standard to interpretation of food label); *Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at *5 (C.D. Cal. Nov. 20, 2018) (dismissing challenge to labeling of characteristics of bottled water as contrary to "common sense"). Here, common sense dictates that when a "reasonable consumer" sees a product prominently labeled as containing butter and oil as among its chief ingredients, they do not assume that the food is low in fat.

And to the extent that the Complaint can be interpreted to question whether consuming "Brain Octane Oil" does, in fact, reduce cravings or help with focus, this allegation raises an issue of "prior substantiation" that is non-actionable under California consumer protection law. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017); *see also Engel v. Novex Biotech, LLC*, 689 F. App'x 510 (9th Cir. 2017) ("Neither California's [UCL] nor its [CLRA] provides consumers with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws."); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) ("Although the [Federal Food, Drug, and Cosmetic Act] requires manufacturers to have substantiation . . . California law does not allow private plaintiffs to demand substantiation for advertising claims . . . Instead, a private plaintiff bears the burden of producing evidence to prove that the challenged statement is false or misleading.").

*Third*, while the Complaint alleges that Plaintiff (or, more likely, her counsel) was unable to independently verify whether Bulletproof's Products are "Rainforest Alliance Certified," that is not enough to satisfy the "reasonable consumer" standard. On this point, the Complaint offers nothing more than a conclusory assertion that, because the Products are not listed on a Rainforest Alliance website, they are not "Certified." Compl. ¶ 48. This is insufficient to state a claim under the "reasonable consumer" standard. *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) ("threadbare conclusory recitals" about allegedly deceptive food labeling insufficient to meet "reasonable consumer" standard).

## C.   Plaintiff Fails to Allege that the Products Are Misbranded Under the FDCA

The Complaint further alleges that certain challenged statements purport to violate federal laws regulating both foods and drugs, rendering these statements "unlawful" under the UCL. Compl. ¶¶ 39, 45, 68-75. The regulations the Complaint relies on, however, are inapplicable to the statements at issue. In many instances,

the regulations are not applicable to the Products at all, as Bulletproof Cold Brew Coffees, are foods, and plainly are not "drugs" under any sensible interpretation of the pertinent authority. Indeed, the Complaint's simultaneous invocation of regulations that cover *both* food and drugs, *see* Part II(A), *infra*, only serves to emphasize this point.

So, these allegations fail to state a claim for relief on the merits, because the Complaint does not plausibly allege a violation of the relied-upon statutes or regulations. *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014) ("[T]o state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation.").

### 1.  The challenged labeling does not render the Products an "Unapproved New Drug"

The Complaint's contention that Bulletproof Coffee—a cold brew coffee blended with oil and grass-fed butter—is a "drug" subject to the FDA's comprehensive drug labeling regulations, Compl. ¶¶ 24-35, is unsupported and belied by the plain language of the same statutes, regulations, and FDA warning letters, upon which the Complaint relies.

The definition of what constitutes a "drug" for purposes of FDA regulation is set forth in 21 U.S.C. § 321(g)(1). Relevant here, the term "drug" means "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease . . ." (§ 321(g)(1)(B)), *or* "articles (other than food) intended to affect the structure or any function of the body . . ." (§ 321(g)(1)(C)). *Id.* A "stimulant" is a sub-category of "drugs" that "restore mental alertness or wakefulness during fatigue or drowsiness." Compl. ¶ 32; 21 C.F.R. § 340.3.

The statements carried on Bulletproof's Products do not bring the Products into the purview of this definition. First and foremost, Bulletproof's labeling does not in any way indicate that the Products are "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease . . ." 21 U.S.C. § 321(g)(1)(B).

Indeed, the Products' labels, including statements like "powers your brain," "curbs snack attacks," and "efficient high-energy fuel," do not reference any disease (or its diagnosis, cure, mitigation, treatment, or prevention) whatsoever. *See generally* Compl. Accordingly, Bulletproof's Products are not "drugs" subject to the FDA's drug regulatory scheme. *Compare Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 335 (2d Cir. 1977) (high-dose vitamins A and D were not "drugs" because product labels did not represent vitamins were effective in the cure or treatment of disease), *with Whitaker v. Thompson*, 353 F.3d 947, 949-50 (D.C. Cir. 2004) (saw palmetto extract product label that stated it could improve symptoms associated with benign prostatic hyperplasia constituted "drug claim" under 21 U.S.C. § 321(g)(1)); *U.S. v. Writers & Research, Inc.*, 113 F.3d 8, 10-11 (2d Cir. 1997) (product label that claimed to be a "non-toxic treatment" for cancer, AIDS, and other chronic diseases constituted a "drug claim" under 21 U.S.C. § 321(g)(1)).

The sole support Plaintiff proffers for this "unapproved drug" allegation is a series of FDA warning letters. *See* Compl. ¶ 25, Ex. 1. These warning letters offer Plaintiff no support, however, because each addressed either *non-food* items subject to the second prong of FDA's definition of "drug" ("articles (*other than food*) intended to affect the structure or any function of the body of man or other animals."), or circumstances in which the challenged labeling made specific reference to a given disease. *Id.* (emphasis added).

For example, while the FDA determined that bulk caffeine powder constituted a "drug" under 21 U.S.C. § 321(g)(1)(C) because the caffeine powder was intended to affect the structure or function of the body, Compl. Ex. 1 (ALV Supplement Direct Warning Letter), this sub-section simply does not apply to Bulletproof's Products as the Products are "food." *See* 21 U.S.C. § 321(g)(1)(C) (sub-section applies only to "articles (other than food)"); 21 U.S.C. § 321(f) ("The term 'food' means . . . articles used for food or drink for man. . ."). Likewise, while the FDA determined that a "BrainAlert" product containing various substances such

as dimethylaminoethanol (DMAE), gotu kola, huperzine A, and Vitamin B3 constituted a "drug" pursuant to § 321(g)(1)(B), it did so because the product labeling made reference to a number of "diseases," including depression, ADD, and anxiety. Compl. Ex. 1 (BrainAlert, LLC Warning Letter); *see also* Compl. Ex. 1 (GnuPharma Corp. Warning Letter) (GnuPharma capsules were "drugs" where marketing indicated products could aid with pain, inflammation, allergies, anxiety, drug and other addictions, etc.). Bulletproof makes no similar "disease" claims.

Thus, nothing on Bulletproof's Product labeling gives rise to a plausible claim that the Products are "drugs." And because the Products are not "drugs," they likewise do not qualify as "stimulants." *See* 21 C.F.R. § 340.3 ("stimulant" is a sub-category of "drug"). Compl. ¶¶ 32-35. Plaintiff's claims based on these theories should be dismissed accordingly.

### 2. Bulletproof Does Not Make Any Unauthorized Nutrient Content Claims

The Products contain 0g of sugar per serving and bear a label statement accurately reflecting this fact. The Bulletproof Cold Brew Coffee + Collagen Protein product also bears a statement that it contains 15g of protein derived from collagen. Plaintiff alleges that the "0g Sugar" and "15g Collagen" statements are nutrient content claims subject to 21 C.F.R. § 101.13, thus requiring the Products to separately disclose that the Products contain levels of fat and/or saturated fat above the levels specified in 21 C.F.R. § 101.13(h)(1). The use of the "0g Sugar" and "15g Collagen" label statements, however, do not constitute nutrient content claims.

The "0g Sugar" and "15g Collagen" statements do not "characterize" the level of sugar or collagen in the food. So, they are not properly classified as nutrient content claims and, thus, do not require the disclaimers regarding fat content referred to in § 101.13(h)(1). The FDCA specifically defines nutrient content claims as a "claim [] made in the label or labeling of the food which expressly or by implication (A) *characterizes* the level of any nutrient." 21 U.S.C. § 343(r)(1)(A)

(emphasis added). FDA regulations implementing the FDCA are in accord, defining nutrient content claims as those that "expressly or implicitly *characterize[]* the level of a nutrient" in food. 21 C.F.R. § 101.13(b) (emphasis added).

Here, the "0g Sugar" and "15g Collagen" statements do not "characterize the level" of sugar or collagen in the products; rather, they are simply accurate factual statements of the amount of sugar and collagen per serving in the respective Products. Indeed, FDA regulations identify similar statements like "100 calories" and "5 grams of fat" as examples of those that do ***not*** "characterize the level of the nutrient in the food." *See* 21 C.F.R. § 101.13(i)(3). Subsection 101.13(i)(3) also specifies that for such statements that do not characterize the level of a nutrient, "no disclaimer is required." *Id.* So, the "0g Sugar" and "15g Collagen" statements are not subject to the "disclaimer" requirements of 21 C.F.R. § 101.13(h)(1), because they are not nutrient content claims. 21 C.F.R. § 101.13(i)(3).

Related FDA authority enforces this distinction between claims that "characterize" the level of nutrient in a food and those that simply state the "amount" of a nutrient, citing the kinds of claims identified in § 101.13(i)(3) as examples. *See* Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302–01, 2310 (proposed Jan. 6, 1993) ("[B]ased on the comments and its review of the 1990 amendments, FDA finds that there are some circumstances *in which an amount claim cannot be considered to characterize in any way* the level of a nutrient in a food. For example, the statement '100 calories' or '5 grams of fat' on the principal display panel of a food would be a *simple statement of amount that, by itself, conveys no implied characterization of the level of the nutrient*. As long as such a statement is not false or misleading, it can appropriately be included in food labeling. Therefore, FDA is providing in new § 101.13(i)(3) that *an absolute statement of amount* may be made without a disclaimer.") (emphases added). *See*

Food Labeling; Requirements for Nutrient Content Claims for Dietary Supplements of Vitamins, Minerals, Herbs, and Other Similar Nutritional Substances, 58 Fed. Reg. 33731-01, 33740 (proposed June 18, 1993) (explaining that "101.13(i)(3) provides for amount or percentage statements that do not characterize the level of a nutrient (including those nutrients without an RDI or DRV) and *that are therefore not nutrient content claims* but rather state amounts present") (emphasis added).

Thus, FDA interpretive guidance corroborates the language of the statute in that factual statements regarding amounts do not "characterize the level" of a nutrient, and so are not regulated as nutrient content claims.

### 3.    Bulletproof Does Not Make Any Unauthorized Health Claims

Plaintiff's contention that the Products bear "unauthorized health claims," Compl. ¶¶ 40-44, is also unsupported.

*First*, a health claim is "any claim made on the label or in labeling of a food . . . that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). Here, the sole statement that Plaintiff alleges constitutes a health claim ("GRASS-FED BUTTER from grass-fed cows is higher in butyrate, a fatty acid that aids in digestion as well as Vitamin K2, which helps push the calcium to your bones—not your arteries." Compl. ¶ 41) does not appear on the Product label and is therefore not subject to FDA's regulations governing food "labels." As the Complaint alleges, this statement appears only on Bulletproof's website. *Id*. The FDCA is clear that the term "label" does not include websites. 21 U.S.C. 321(k) ("The term 'label' means a display of written, printed, or graphic matter upon the immediate container of any article . . ."). Further, the definition of "labeling" means materials that "accompany" the food label. See 21 U.S.C. 321(m) ("The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143 (N.D. Cal. 2013)

(statements made on the www.fritolay.com website do not "accompany" the products such that they can be classified as "labeling" under the FDCA).

*Second*, to constitute a health claim, a statement must reference both: (1) a substance and (2) a specific disease or health-related condition. *See* FDA, Guidance for Industry: A Food Labeling Guide, at 81 (Jan. 2013), https://www.fda.gov/media/81606/download. Plaintiff alleges that the challenged statement constitutes a health claim relating to heart health (Compl. ¶¶ 43-44), however, a plain reading of the statement reveals that Bulletproof makes no reference to "heart health" whatsoever. Indeed, the Bulletproof statement does not reference any specific disease or health-related condition at all. Further, the type of "health-related conditions" the regulation covers are specific ones like lung cancer, heart disease, or high blood pressure. *See id.* at H4-H6 (listing examples of diseases and health-related conditions). Here, a statement asserting that Vitamin K2 "helps push [] calcium to [your] bones" is too vague and general to relate to a "health-related condition." *See also Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822, at *8 (N.D. Cal. Jan. 6, 2014) (generalized statements such as "protective antioxidants" are too general to relate to a "health-related condition" and do not violate FDA health claim regulations).

## D.   The Complaint Fails to Allege Facts Sufficient to Satisfy Rule 9(b)

Rule 9(b) imposes a heightened pleading standard requiring that "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This heightened standard applies to UCL and CLRA claims premised on alleged fraudulent conduct. *Kearns v. Ford Motor* Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s particularity requirement applies to these state-law causes of action [including UCL and CLRA claims].") So, it is well-established that Rule 9(b) applies to complaints asserting violations of the UCL and CLRA, where the challenged conduct involves alleged misrepresentations or omissions on the labeling of food or beverage products. *See Arabian v. Organic Candy Factory*,

2018 WL 1406608, at *3 (C.D. Cal. Mar. 19, 2018) (Wright, J.) (holding that claims alleging misleading food labeling "are grounded in fraud" and dismissing for failure to plead facts to satisfy Rule 9(b)).

"It is not enough [under Rule 9(b)] . . . to simply claim that [a statement] is false." *Davidson v. Kimberly–Clark Corp.*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014), *rev'd on other grounds*, 873 F.3d 1103 (9th Cir. 2017), *amended and superseded on denial of reh'g en banc*, 889 F.3d 956 (9th Cir. 2018). Rather, Rule 9(b) requires a pleading to allege facts sufficient to identify "'the who, what, when, where, and how of the misconduct charged,' as well as '*what is false* or misleading about the purportedly fraudulent statement, and *why it is false*.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (emphasis added).

In this case, Rule 9(b) thus requires—at a minimum—that the Complaint plead specific facts as to: (1) Plaintiff's reliance (*i.e.*, the "what"); and (2) her basis for believing that the alleged misleading labeling is false (*i.e.*, the "how" and "why"). *See In re 5-hour Energy Mktg. and Sales Practices Litig.*, 2014 WL 5311272, at *16 (C.D. Cal. Sept. 4, 2014) ("Plaintiffs here have similarly failed to indicate what particular statements (in advertisements or otherwise) they relied on when purchasing [defendant's product]. As a result, their claims do not pass muster under Rule 9(b).") (collecting cases); *Arabian*, 2018 WL 1406608, at *4 ("Plaintiff does not adequately set forth why the statements on the packaging of the Class Products are false."). The Complaint fails both these standards.

*First*, as described in detail in Section IV(A), above, the Complaint contains no allegations of reliance on any Bulletproof Product label or other marketing material. *See supra* Section IV(A). So, the Complaint certainly does not contain the kind of factual specificity regarding reliance that Rule 9(b) mandates. *In re 5-hour Energy Mktg. and Sales Practices Litig.*, 2014 WL 5311272, at *16; *Jones v. Nutiva, Inc.*, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) ("[A]lthough the

complaint includes different labels for Defendant's [products], it does not state that Plaintiff [] relied on any of them. Such incomplete allegations do not satisfy Rule 9(b)[.]").

*Second*, the Complaint fails to allege "why" Plaintiff believes the Products' labeling is false and, if so, "how" she came to that conclusion. *Arabian*, 2018 WL 1406608, at *4. Here, the Complaint contains nothing more than a boilerplate allegation that "Plaintiff would not have purchased Bulletproof Cold Brew products had she known that they were unlawfully labeled, misbranded, contained false claims, and an unapproved new drug." Compl. ¶ 52. But this allegation is just a recitation of the purported legal basis for the UCL and CLRA claims: It does not explain why Plaintiff considers the Products' labeling to be false, or how she came to that conclusion. *Arabian*, 2018 WL 1406608, at *4 ("Stating that Plaintiff 'learned about' why the packaging labels were false lacks the particularity that Rule 9(b) requires."). The Complaint is particularly lacking in this regard, because the statements that Plaintiff otherwise challenges are, in fact, true. *See supra* Section II(A).[4] The Complaint should be dismissed for failure to satisfy Rule 9(b).

## V.    CONCLUSION

For the foregoing reasons, Bulletproof 360, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

---

[4] The Complaint also fails to satisfy Rule 9(b) because it does not identify, among the seven varieties of Products, which one(s) Plaintiff purchased. Compl. ¶¶ 51-52. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (dismissing fraud-based claims for failure to satisfy Rule 9(b) where plaintiff did not allege which specific products she purchased).

DATED:  July 15, 2019

**PERKINS COIE LLP**

By: */s/ Charles Sipos*
    Charles Sipos, *pro hac vice*
    CSipos@perkinscoie.com
    Mica D. Klein, pro hac vice
    MicaKlein@perkinscoie.com
    Jasmine W. Wetherell, Bar No. 288835
    JWetherell@perkinscoie.com

*Attorneys for Defendant*
*Bulletproof 360, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 15, 2019, I caused to be filed via the CM/ECF system a true and correct copy of the foregoing document and that service of this document was accomplished on all parties in the case by the CM/ECF system.

*/s/ Mica Klein*
Mica Klein, *pro hac vice*
MicaKlein@perkinscoie.com