Jasmine W. Wetherell, Bar No. 288835
JWetherell@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone: 310.788.9900
Facsimile:  310.788.3399

Charles Sipos, *pro hac vice*
CSipos@perkinscoie.com
Mica Klein, *pro hac vice*
MicaKlein@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone: 206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendant Bulletproof 360, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TIFFNI ALTES, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BULLETPROOF 360, INC.,<br><br>　　　　　Defendant. | Case No. 2:19-cv-04409-ODW-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BULLETPROOF 360, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:　　　　September 30, 2019<br>Time:　　　　1:30 p.m.<br>Courtroom: Courtroom 5D<br>Judge:　　　Hon. Otis D. Wright II |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... 1

II. FACTUAL BACKGROUND ................................................................ 3

    A.  The FAC's Allegations Regarding Bulletproof Products ................... 3

        1.  The FAC identifies several true statements that are nonetheless alleged to be "misleading" ....................................... 4

        2.  The FAC identifies several true statements that it alleges violate certain federal regulations ........................................ 5

    B.  The FAC's Allegations Regarding Plaintiff's Purchases .................... 6

III. LEGAL STANDARD ............................................................................ 7

    A.  Standards for Dismissal Under Rule 12(b)(1) ................................... 7

    B.  Standards for Dismissal Under Rule 12(b)(6) ................................... 8

IV. ARGUMENT ......................................................................................... 9

    A.  Plaintiff Lacks Article III and Statutory Standing to Pursue Claims Relating to Statements Carried on Bulletproof's Website ...... 9

    B.  Bulletproof's Labels Are Not Misleading to a Reasonable Consumer ......................................................................................... 12

        1.  The reasonable consumer standard governs Plaintiff's claims ................................................................................... 12

        2.  Plaintiff fails to plead facts plausibly showing the challenged statements are false or misleading to a reasonable consumer ...................................................... 13

    C.  Plaintiff's Allegations Regarding Specific Claims Are Barred by The Prior Substantiation Doctrine ................................................ 15

    D.  Plaintiff Fails to Allege that the Products Are Misbranded Under the FDCA ..................................................................................... 18

        1.  The challenged labeling does not render the products an "unapproved new drug" ............................................... 18

        2.  Bulletproof does not make any unauthorized nutrient content claims ................................................................ 20

        3.  Bulletproof does not make any unauthorized health claims ..... 22

    E.  The FAC Fails to Allege Facts Sufficient to Satisfy Rule 9(b) .......... 24

V.  CONCLUSION .................................................................................... 25

Case No. 2:19-cv-04409-ODW-SK
MEMO. OF POINTS & AUTHORITIES RE:
DEFENDANT'S MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES

**Page**

CASES

*Arabian v. Organic Candy Factory*,
2018 WL 1406608 (C.D. Cal. Mar. 19, 2018) (Wright, J.) .......................... 24, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 9

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ................................................................................... 9

*Becerra v. Dr Pepper/Seven Up, Inc.*,
2018 WL 3995832 (N.D. Cal. Aug. 21, 2018), *app. docketed*, No.
18-16721 (9th Cir. Sept. 12, 2018) ........................................................ 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 8, 9

*Brazil v. Dole Food Co.*,
2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ....................................... 11

*Brown v. Starbucks Corp.*,
2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ............................................ 15

*Bruton v. Gerber Prods. Co.*,
961 F. Supp. 2d 1062 (N.D. Cal. 2013) *rev'd and remanded on
other grounds*, 703 F. App'x 468 (9th Cir. 2017) ................................. 11

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ................................................................ 24

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ....................................... 13

*Dachauer v. NBTY, Inc.*,
913 F.3d 844 (9th Cir. 2019) .................................................................. 16

**TABLE OF AUTHORITIES**

(continued)

Page

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ...................................................................... 7

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ........................................................ 12

*Engel v. Novex Biotech, LLC*,
   689 F. App'x 510 (9th Cir. 2017) ................................................ 16

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................ 15

*Fraker v. Bayer Corp.*,
   2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) .............................. 17

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................ 13, 14

*Hadley v. Kellogg Sales Co.*,
   No. 16-cv-4955-LHK, ECF No. 31 (Nov. 15, 2016) .................... 1

*In re 5-hour Energy Mktg. and Sales Practices Litig.*,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ......................... 24, 25

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ...................................... 11

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................... 9, 10

*Jones v. Nutiva, Inc.*,
   2017 WL 3617104 (N.D. Cal. Aug. 23, 2017) ............................ 25

*Joseph v. Kraft Heinz Foods Co.*,
   691 F. App'x 850 (9th Cir. 2017) ................................................ 10

*Joseph v. Nordstrom, Inc.*,
   2016 WL 6917279 (C.D. Cal. June 17, 2016) ............................ 10

*Kane v. Chobani, Inc.*,
   2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................ 10

-iii-

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)................................................................24

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017)......................................................16, 17

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011)..............................................................................9

*Lanovaz v. Twinings N. Am., Inc.*,
   2013 WL 675929 (N.D. Cal. Feb. 25, 2013)......................................12

*Lanovaz v. Twinings N. Am., Inc.*,
   2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ...........................................24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................7, 8, 9

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014)................................................18

*Manchouck v. Mondelez, Int'l*,
   2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x
   632 (9th Cir. 2015) ...............................................................................13

*Nat'l Nutritional Foods Ass'n v. Mathews*,
   557 F.2d 325 (2d Cir. 1977) .................................................................19

*Ogden v. Bumble Bee Foods, LLC*,
   2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...........................................12

*Painter v. Blue Diamond Growers*,
   757 F. App'x 517 (9th Cir. 2018)........................................................13

*Phillips v. Apple Inc.*,
   2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ....................................9

*Red v. General Mills, Inc.*,
   2015 WL 9484398 (Wright, J.) (C.D. Cal. Dec. 29, 2015)..................6

1

2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3

4

*Savage v. Glendale Union High Sch. Dist. No. 205*,
  343 F.3d 1036 (9th Cir. 2003) ................................................................. 8

5

6

*SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*,
  88 F.3d 780 (9th Cir. 1996) .................................................................... 8

7

8

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) .................................................................. 8

9

10

*Stanley v. Bayer Healthcare LLC*,
  2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ....................................... 16

11

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) .............................................. 25

12

13

*Takano v. Procter & Gamble Co.*,
  2018 WL 5304817 (E.D. Cal. Oct. 24, 2018) .................................... 11

14

15

*Tubbs v. AdvoCare Int'l, LP*,
  2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ................................... 16

16

17

*U.S. v. Writers & Research, Inc.*,
  113 F.3d 8 (2d Cir. 1997) ...................................................................... 19

18

19

*Weiss v. Trader Joe's Co.*,
  2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) *app. docketed*, No.
  19-55841 (9th Cir. July 24, 2019) ...................................................... 15

20

21

*Whitaker v. Thompson*,
  353 F.3d 947 (D.C. Cir. 2004) ............................................................. 19

22

23

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ................................................................ 8

24

25

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) .............................................. 23

26

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) .................................................................. 8

27

28

# TABLE OF AUTHORITIES
(continued)

**Page**

RULES

Fed. R. Civ. P. 9(b) .......................................................................................*passim*

Fed. R. Civ. P. 12(b)(1) ...............................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...............................................................................*passim*

STATUTES

21 U.S.C. § 321.............................................................................................*passim*

21 U.S.C. § 343.....................................................................................................21

21 U.S.C. § 355.......................................................................................................5

Cal. Bus. & Prof. Code § 17200 ..................................................................*passim*

Cal. Bus. & Prof. Code § 17508 ..................................................................*passim*

Cal. Civ. Code § 1750 ..................................................................................*passim*

REGULATIONS

21 C.F.R. § 101.13...................................................................................5, 21, 22

21 C.F.R. § 101.14.........................................................................................6, 22

21 C.F.R. § 340.3.........................................................................................19, 20

58 Fed. Reg. 2302-01...........................................................................................22

58 Fed. Reg. 33731-01.........................................................................................22

OTHER AUTHORITIES

FDA, Guidance for Industry: A Food Labeling Guide (Jan. 2013),
    https://www.fda.gov/media/81606/download ....................................................23

U.S. Const. Art. III.......................................................................................*passim*

# I.    INTRODUCTION

Plaintiff Tiffni Altes' First Amended Complaint ("FAC")[1] continues to assert that the labeling and marketing of Defendant Bulletproof 360, Inc.'s ("Bulletproof") Cold Brew Coffees is misleading or unlawful. Despite having had the opportunity to reform her allegations in response to Bulletproof's now-moot initial motion to dismiss, the FAC remains rife with basic pleading deficiencies, all of which warrant its dismissal pursuant to Federal Rule of Civil Procedure 12(b).

The FAC posits that certain statements on Bulletproof's Cold Brew Coffees are unlawful or misleading based on nonsensical interpretations of the products' labels and an incorrect interpretation of federal law. For example, it alleges that references to the fact that the Cold Brew Coffees contain highly refined oil and grass-fed butter—ingredients that common-sense dictates are sources of fat— nonetheless somehow imply that the products are *low* in fat. And it asserts that statements regarding the nutritional benefits of the products render them "drugs," even though this is plainly contrary to the language of the statutes and regulations applicable to drugs that the FAC relies upon and even though it is a self-evident fact that the products are food. Dismissal of the FAC on multiple grounds is therefore warranted.

*First*, the FAC continues to challenge dozens of marketing claims that are drawn from both the Cold Brew Coffee labels as well as Bulletproof's website. In cases involving alleged mislabeling of consumer goods, the "causation" aspect of Article III standing requires Plaintiff to allege she relied on the purportedly misleading or unlawful claims, such that her harm was "caused" by that reliance.

---

[1] The FAC was filed as an amendment to Plaintiff's prior complaint in response to Bulletproof's first motion to dismiss. *See* Dkt. Nos. 22, 26 (Bulletproof's initial motion followed by amendment). Because Plaintiff has already amended her allegations once in response to Bulletproof's initial motion to dismiss, any dismissal on this Motion should be with prejudice. *See, e.g.*, Order Denying Motion to Dismiss as Moot, *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK (N.D. Cal. Nov. 15, 2016), ECF No. 31 at 2 (denying motion to dismiss initial complaint as moot and ordering that any future dismissal must be with prejudice given plaintiff's amendment in response to defendant's first motion to dismiss).

1    Even after amending her complaint, however, Plaintiff still fails to allege that she

2    actually saw or relied on any of the statements presented on Bulletproof's website.

3    This pleading failure deprives Plaintiff of Article III standing (and, by extension,

4    statutory standing) to pursue claims related to these website statements.

5         *Second*, the FAC's challenge to certain aspects of Bulletproof's labeling as

6    misleading fails on the merits because no "reasonable consumer" would be misled

7    by that labeling. The statements the FAC challenges, such as the fact that the coffee

8    beans in Bulletproof's Cold Brew Coffees is screened to remove certain toxins, and

9    that the products contain oil, are indisputably true. Moreover, the FAC's allegations

10   of deception as to these statements are based on utterly implausible interpretations

11   of the products' labeling—*e.g.*, that a reasonable consumer interprets the fact that

12   Bulletproof screens its coffee to remove toxins as an assertion that non-Bulletproof

13   coffee causes health harms, or that references to oil and butter indicate that

14   Bulletproof Cold Brew Coffee is *low* in fat.

15        *Third*, to the extent that the FAC raises questions of whether advertising

16   claims such as "fewer cravings" and "fuel to sustain your body and mind" are

17   validated, the FAC constitutes an improper attempt by Plaintiff to demand "prior

18   substantiation" that is non-actionable under California consumer protection law.

19        *Fourth*, the FAC's unlawful claims depend in part on an argument that Cold

20   Brew Coffee, a food, is nonetheless subject to regulation as a "drug." But none of

21   the statements Plaintiff challenges indicate that the products are intended for use in

22   the diagnosis, cure, treatment, or prevention of any disease, as FDA's "drug"

23   regulations require. Likewise, the FAC alleges that the products bear unauthorized

24   or unapproved nutrient content or health claims, which are regulations that *do* apply

25   to foods. But a plain reading of the statutes and regulations Plaintiff relies upon

26   reveals that none of the challenged statements meet these criteria.

27        *Finally*, the FAC fails to satisfy the heightened pleading standard of Fed. R.

28   Civ. P. 9(b). The FAC *per se* does not allege "what" Plaintiff believes is false. Nor

does the FAC satisfy the "how" or "why" elements of the standard, because Plaintiff does not allege "why" she believes any such claims are false and misleading, or "how" she came to that conclusion if so.

For these reasons, the Court should dismiss Plaintiff's FAC with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The FAC's Allegations Regarding Bulletproof Products

Defendant Bulletproof manufactures and markets the products at issue: (1) Bulletproof Cold Brew Coffee; and (2) Bulletproof Cold Brew Coffee + Collagen Protein. FAC ¶ 3. The products are pre-packaged ready-to-drink coffees that come in several flavor varieties, totaling seven products (collectively, the "Products"). *Id.* ¶¶ 13–20. As the FAC acknowledges, and the labels plainly and repeatedly disclose, the Products contain—in addition to coffee—a blend of grass-fed butter and refined coconut oil. *Id.*

The FAC asserts that nine statements on the Products' labels are either allegedly misleading or purportedly violate federal statutes or regulations. FAC ¶¶ 62, 86 (challenging the following statements as false, misleading or unlawful: (1) "Certified Clean Coffee"; (2) "BRAIN OCTANE OIL"; (3) "It's clean coffee certified to be free of 27 energy-sapping toxins, plus grass-fed butter and Bulletproof Brain Octane Oil"; (4) "All Day Energy + Protein"; (5) "Fuel to Sustain You Mind and Body"; (6) "0g Sugar"; (7) "Lasting Energy"; (8) "Fewer Cravings [¶] Brain Octane Oil Powers Your Brain and Curbs Snack Attacks"; (9) "Essential for Hair, Skin & Nails [¶] 15g of Collagen Protein Pack a Beautiful Punch"). The FAC likewise identifies nine statements on the Bulletproof website as either misleading or "unauthorized" under federal law. FAC ¶ 21, 62, 65, 69 (identifying website statements); *id.* ¶¶ 28, 33 (alleging statements are misleading or "unauthorized").

As discussed below, however, the FAC fails to explain any of the challenged statements are false and otherwise cites inapplicable regulations to assert that certain statements are purportedly "unauthorized."

### 1. The FAC identifies several true statements that are nonetheless alleged to be "misleading"

*First*, the FAC points to the statement appearing on some (but not all) versions of the Products' labels that Bulletproof's coffee "beans are farmed, screened, and tested to be free of 27 common toxins to keep you mentally and physically feeling your best." FAC ¶ 29. There is no allegation that this statement is false. To the contrary, the FAC acknowledges that mycotoxins are present in coffee beans, citing a study in which 89% of the coffee samples analyzed by researchers were contaminated by mycotoxins. FAC ¶ 30 & fn. 5.

Instead, Plaintiff alleges this statement is misleading because it purportedly implies that the Products are a "healthy alternative to regular coffee" or that "consuming competing coffee results in health risks." FAC ¶¶ 27, 31. The FAC does not point to any facts to substantiate the notion that by truthfully describing the Products as free of certain toxins, the label caused Plaintiff (or anyone else) to form the impression that non-Bulletproof coffee is unhealthy, "dirty," or "unsafe." FAC ¶ 8.

*Second*, the FAC alleges that the label statement that consuming the "BRAIN OCTANE OIL" in the Products will lead to "fewer cravings," "curb[] snack attacks," and "power your brain" is misleading. FAC ¶¶ 28, 32. Here again, the FAC does not allege that this statement is false or explain why Plaintiff believes it to be false. Instead, the FAC pivots to point to the fact that the Products contain saturated fat. *Id.* ¶ 34.

There is no allegation of fact, however, that the Products' saturated fat content has any bearing on the Products' ability to reduce cravings—or that Plaintiff or anyone else interpreted these "fewer cravings" or "power your brain"

references as an affirmation that the Products are fat-free. Nor do the labels themselves support this inference: The Products' labels consistently and prominently state on their front panel that they contain "GRASS-FED BUTTER" and "BRAIN OCTANE OIL," alerting consumers to the fact they contain fat. FAC ¶¶ 14, 16, 18 (product labels). The presence of these ingredients is declared for a second time on the Products' ingredient deck, along with the Nutrition Facts Panel's disclosure of the exact amount of saturated fat in the Products. *Id.*

2.   **The FAC identifies several true statements that it alleges violate certain federal regulations**

Next, the FAC alleges that various statements on Bulletproof Products' labels or on its website purportedly violate FDA regulations.

*First*, Plaintiff alleges twelve statements—drawn from both the Product labels or the Bulletproof website—have the effect of rendering the Products an "unapproved new drug." *See* FAC ¶ 38 (listing "drug claims"). Plaintiff alleges that these statements violate 21 U.S.C. § 355(a)—an FDA regulation prohibiting the introduction of unapproved new drugs into interstate commerce—despite the fact the Bulletproof Products are indisputably food products. FAC ¶¶ 38–41.

*Second*, the FAC alleges that the "0 Sugar" statement on the Products' label violates 21 C.F.R. § 101.13(h)(1)—a regulation that, despite the FAC's earlier allegations regarding the Products being classified as a "drug," only applies to food—because the labels do not contain additional language referring to the fact that the Products contain fat. FAC ¶¶ 50–53. Here again, it is indisputably true that the Products *do* contain "0g Sugar." *See* FAC ¶¶ 14, 16, 18. Moreover, this "0g Sugar" statement appears directly adjacent to language identifying "oil" and "GRASS-FED BUTTER" as among the Products' principal ingredients, both of which are fat-rich foods. There is likewise no allegation that Plaintiff interpreted this "0g Sugar" statement to mean the Products are fat-free.

*Third*, the FAC alleges that the following statement is an unauthorized

"health claim" under federal regulations: "GRASS-FED BUTTER: Butter from grass-fed cows is higher in butyrate, a fatty acid that aids in digestion as well as Vitamin K2, which helps push the calcium to your bones—not your arteries." FAC ¶ 67 (citing 21 C.F.R. § 101.14(a)(1)). "Health claims" are defined in §101.14(a)(1) as those that "characterize the relationship of any substance to a disease or health-related condition." *Id.* Thus, the regulation applies only to statements addressing a "disease or health-related condition." Moreover, by its plain language, the regulation applies only to statements on the "label or in labeling" of a food. *Id.* The statement challenged by the FAC here appears on a Bulletproof *website*, not any Product label. FAC ¶¶ 14, 16, 18 (product labels); ¶ 66 (challenged statement originates from Bulletproof's website).

## B.   The FAC's Allegations Regarding Plaintiff's Purchases.

The FAC alleges Plaintiff Tiffni Altes "purchased Bulletproof Cold Brew Coffee at least twice in the past two years" at a California grocery store. FAC ¶ 83.[2] The FAC further alleges that, in purchasing the Products, Plaintiff "relied on the label" which reflected the following claims: (1) "Brain Octane Oil"; (2) "Fuel to Sustain Your Mind and Body"; (3) "0G SUGAR"; (4) "ZERO SUGAR"; (5) "Lasting Energy"; (6) "Fewer Cravings [¶] Brain Octane Oil Powers Your Brain and Curbs Snack Attacks"; (7) "Certified Clean Coffee"; (8) "It's clean coffee certified to be free of 27 energy-sapping toxins, plus grass-fed butter and Bulletproof Brain Octane Oil—extracted from the most potent part of the coconut—to power your brain and body and give you steady, all day energy." FAC

---

[2] This action is one of three food labeling class actions that Ms. Altes has filed in this District over a roughly one-month period, all brought by the same Plaintiff's counsel Mr. Weston. *Tiffni Altes v. Greenbrier Int'l, Inc.*, Case No. 2:19-cv-03011-SVW-FFM (filed Apr. 18, 2019); *Tiffni Altes v. Star Brands N. Am., Inc.*, 2:19-cv-04399-JAK-AS (filed May 21, 2019). As the Court is aware, this is not Mr. Weston's first association with a serial class litigant. *See Red v. General Mills, Inc.*, 2015 WL 9484398, at *5 (Wright, J.) (C.D. Cal. Dec. 29, 2015) (dismissing putative class action regarding trans fat labeling on Article III standing grounds, noting that Plaintiff's prior litigation regarding food labeling raised inference that any Article III injury she suffered was self-inflicted).

¶ 86. This is the full extent of Plaintiff's allegations regarding her purchases or her alleged deception.

So, the FAC does not allege Plaintiff ever saw, read, reviewed, or relied on any of the various statements that allegedly originated from the Bulletproof website (indeed, her allegation that she purchased the Products at a supermarket, FAC ¶ 83, is inconsistent with the notion that she relied on any online marketing material in connection with those purchases). Further, she does not allege that she herself believed that any of the challenged statements—whether found on the Product labels or on the Bulletproof website—have the meaning the FAC ascribes to them. Nor does she allege which of the multiple varieties of the Products she purchased. In place of these allegations, the FAC merely asserts that Plaintiff "would not have purchased Bulletproof Cold Brew absent these misleading claims, and never would have purchased Bulletproof had she known it was misbranded, deceptively marketed, an unapproved new drug, and sold in violation of California and federal law." *Id.* ¶ 87.

Based on these allegations and those described in Section II(A), above, the FAC asserts two causes of action: (1) unfair, unlawful, and fraudulent conduct in violation of California's UCL, Cal. Bus. & Prof. Code § 17200; and (2) violation of California's CLRA, Cal. Civ. Code § 1750.

### III.    LEGAL STANDARD

### A.    Standards for Dismissal Under Rule 12(b)(1)

Under Article III of the U.S. Constitution, federal courts may decide only "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006).

For a plaintiff to qualify for Article III standing, (1) the plaintiff must have suffered an actual, concrete, and particularized injury in fact; (2) there must be a causal connection between the alleged injury and the challenged conduct such that the injury is fairly traceable to the conduct complained of; and, (3) it must be likely

that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The party invoking federal jurisdiction has the burden of establishing these three elements. *Id*. at 561. If a plaintiff lacks Article III standing, federal courts are without subject matter jurisdiction and the action must be dismissed. Fed. R. Civ. P 12(b)(1).

When raising a factual challenge to subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may present affidavits or other evidence outside the pleadings without converting the motion to one for summary judgment. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court does not presume the truth of the complaint's allegations under such circumstances, and the burden then falls on the plaintiff to establish—through affidavits or other evidence—that the Court has subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). If the plaintiff fails to carry that burden, the action must be dismissed. *St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989) (affirming Rule 12(b)(1) dismissal based on defendant's submission of evidence disproving jurisdiction under Article III).

## B.    Standards for Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest[]," and not merely be consistent with, the claimed wrongful conduct. *Id.* at 557. The court may dismiss a complaint as a matter of law for (1) "lack of a cognizable legal theory"; or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).

While factual allegations are assumed true, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action." *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is improper to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III and Statutory Standing to Pursue Claims Relating to Statements Carried on Bulletproof's Website

Article III standing requires a plaintiff to plausibly allege: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) redressability. *Lujan*, 504 U.S. at 560-62; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). The same is true for UCL and CLRA claims: A complaint must allege facts sufficient to establish Article III standing in order for the plaintiff to have statutory standing to assert claims brought under these statutes. *See Phillips v. Apple Inc*., 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) ("[T]o establish Article III and statutory standing Plaintiffs must show an injury in fact that is causally linked to [the defendant's] alleged misrepresentations and omissions") (emphasis added).

In UCL and CLRA cases, the causation element imposed by both Article III and statutory standing requires the plaintiff to plausibly allege actual reliance on the defendant's purported misrepresentation. *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) ("[F]or purposes of standing under the CLRA and UCL, a showing of causation requires a showing that Plaintiffs actually relied on [defendant's] alleged misrepresentations…Plaintiffs must [also] establish actual reliance on [the defendant's] alleged misrepresentations to demonstrate causation for purposes of Article III standing."); *see also Kwikset Corp*., 51 Cal. 4th at 326–27 ("a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or

her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions'"); *Joseph v. Nordstrom, Inc*., 2016 WL 6917279, at *3 (C.D. Cal. June 17, 2016) ("under the CLRA, a plaintiff must plead that he or she suffered economic injury through actual reliance on the defendant's allegedly deceptive practices").

Thus, a failure to allege reliance mandates dismissal for lack of Article III and statutory standing. *Joseph v. Kraft Heinz Foods Co*., 691 F. App'x 850 (9th Cir. 2017) (upholding district court's dismissal of UCL claims where plaintiff "failed to allege facts sufficient to show that he relied on the absence of a country of origin marking on defendants' cashew products in making his purchases"); *In re iPhone Application Litig*., 6 F. Supp. 3d at 1015 (dismissal proper under Article III for lack of statutory standing unless plaintiff "actually relied on the misrepresentations"); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *7–11 (N.D. Cal. Sept. 19, 2013) (dismissing UCL and CLRA claims due to lack of reliance and thus lack of Article III and statutory standing).

Here, the FAC lacks any allegation that Plaintiff relied on any of the challenged language purportedly drawn from Bulletproof's websites (the "Website Statements"). *See generally* FAC ¶¶ 85–87. Indeed, Plaintiff does not allege that she read the Website Statements, much less relied on them for her purchasing decision. *Id*. Instead, Plaintiff alleges only that the product labels bear the website URLs, and, therefore, the labels have "incorporate[d] by reference" the Website Statements. FAC. ¶ 21. This is simply incorrect.

Plaintiff's allegation that, because the labels reference the Website URL, the labels incorporate the Website statements "by reference" does not amount to actual reliance for the purposes of determining standing under the UCL and CRLA because Plaintiff still fails to allege that she actually viewed the Website Statements prior to purchasing the Products. *Bruton v. Gerber Prods. Co*., 961 F. Supp. 2d

1062, 1091 (N.D. Cal. 2013) *rev'd and remanded on other grounds*, 703 F. App'x 468 (9th Cir. 2017) (plaintiff's theory of "incorporation by reference" does not suffice to plead actual reliance on the statements on defendant's website, and therefore plaintiff does not have standing to assert claims based on websites that she did not view personally). Numerous other courts have also determined that failure to allege actual reliance on specific website statements deprives a plaintiff of standing under the UCL and CLRA.

For example, in *Brazil v. Dole Food Co.*, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013), the court found that the named plaintiff did not have standing to assert claims based on language from the defendant's website because the plaintiff did not view or rely on these marketing materials prior to making his purchase. *Id.* at *2. The Northern District reasoned that "[w]ere [it] to hold that Brazil, who never viewed the Health Claims, has standing to bring claims based solely upon allegations that he would not have purchased a product that was misbranded, purchasers who never 'viewed the defendant's advertising' or misleading labeling would have standing to sue." *Id.* at *9. Likewise, in *In re Ferrero Litigation*, the plaintiffs alleged that Ferrero's Nutella website contained numerous misrepresentations, but in the complaint the plaintiffs only alleged that they relied on representations from Nutella's label and television advertisements prior to purchasing the product. *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011). The Southern District found that, based on these allegations, "[p]laintiffs did not actually rely on the statements on Nutella's website before making their purchases and lack[ed] standing to challenge these statements under the UCL, FAL, and CLRA." *Id.* Indeed, virtually every district court in California has come to the same conclusion. *See, e.g.*, *Takano v. Procter & Gamble Co.*, 2018 WL 5304817, at *3 (E.D. Cal. Oct. 24, 2018) (dismissing plaintiff's UCL and CLRA claims regarding representations on Defendant's website for lack of standing because plaintiff did not allege that she looked or relied on the website representations prior

to purchasing products); *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *10–11 (N.D. Cal. Jan. 2, 2014) (plaintiff does not have standing to pursue UCL and CLRA claims based on defendant's website statements that plaintiff neither visited nor relied upon prior to purchasing defendant's products); *Lanovaz v. Twinings N. Am., Inc*., 2013 WL 675929, at *4 (N.D. Cal. Feb. 25, 2013) ("the court struck claims depending upon information on the website as plaintiff has not adequately alleged that she bought any particular product based upon specific representations or statements on the website").

Plaintiff's failure to allege reliance on the Website Statements means that she cannot satisfy the "causal connection" requirement of Article III, nor the causation requirement for statutory standing under the UCL and CLRA. Dismissal of those claims under both Rule 12(b)(1) and 12(b)(6) is therefore proper.

**B.      Bulletproof's Labels Are Not Misleading to a Reasonable Consumer**

Plaintiff's (fraudulent and unfair) UCL and CLRA claims also fail on the merits because none of the challenged Label Statements are misleading to a reasonable consumer. *See* FAC ¶¶ 13–20. The claims challenged are, instead, factually accurate descriptions about the Products. Moreover, the FAC does not allege any facts to indicate how and why reasonable consumers were misled by these claims into drawing any incorrect inference about the Products.

**1.      The reasonable consumer standard governs Plaintiff's claims**

To state a claim for relief under the fraudulent or unfair prongs of the UCL and the CLRA, a plaintiff must plausibly allege the conduct at issue is likely to deceive a "reasonable consumer." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016). "Meeting the reasonable consumer standard] requires more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be

1    misled." *Id.*

2        Where a complaint fails to plausibly allege that a "reasonable consumer"

3    would be misled by the labeling at issue, courts may—and frequently do—dismiss

4    the complaint at the pleading stage. *See, e.g.*, *Painter v. Blue Diamond Growers*,

5    757 F. App'x 517, 519 (9th Cir. 2018) ("[Plaintiff's] complaint does not plausibly

6    allege that a reasonable consumer would be deceived into believing that

7    [defendant's] almond milk products are nutritionally equivalent to dairy milk based

8    on their package labels and advertising"); *Chuang v. Dr. Pepper Snapple Grp., Inc.*,

9    2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) (dismissing complaint where

10   plaintiff failed "to point to any false statements" carried on defendants' fruit snack

11   packaging).

12       Dismissal under this standard is appropriate where the complaint offers a

13   strained and implausible interpretation of the challenged labeling claim or

14   statement, *see Becerra v. Dr Pepper / Seven Up, Inc*., 2018 WL 3995832, at *4–7

15   (N.D. Cal. Aug. 21, 2018), *app. docketed*, No. 18-16721 (9th Cir. Sept. 12, 2018)

16   (dismissing complaint with prejudice under the "reasonable consumer" standard

17   where the complaint failed to "allege facts that plausibly support that the reasonable

18   consumer would be deceived by the 'diet' label"); *Manchouck v. Mondelez, Int'l*,

19   2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th

20   Cir. 2015) (dismissing with prejudice because no reasonable consumer would

21   understand "made with real fruit" to exclude fruit puree), or where the plaintiff

22   challenges a factually true statement, *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d

23   1074, 1093 (N.D. Cal. 2017) (dismissing complaint with prejudice where

24   challenged claim "MADE WITH Real Fruit" is a factually true statement).

25       **2.    Plaintiff fails to plead facts plausibly showing the challenged
              statements are false or misleading to a reasonable consumer**

26

27       The FAC challenges two Label Statements as allegedly false or misleading:

28   (1) that "not all coffee is created equal" and that Bulletproof's coffee beans are

"farmed, screened, and tested to be free of 27 common toxins," and (2) that the Products contain "BRAIN OCTANE OIL," the consumption of which will result in "fewer cravings," "power your brain," and "curb[] snack attacks." FAC ¶¶ 29, 32. The FAC does not plausibly allege, however, that any of these statements are misleading to a reasonable consumer.

*First*, the FAC alleges that the statements "not all coffee is created equal" and "free of 27 common toxins" communicates an implied message that "consuming competing coffee results in health risks." FAC ¶ 31. But the FAC does not plead facts to indicate that even Plaintiff—let alone a "reasonable consumer"— would interpret a factual statement that the Products are screened to remove toxins as communicating that "regular coffee" is unhealthy. *Becerra*, 2018 WL 3995832, at \*4–7 (dismissing complaint on "reasonable consumer" grounds where complaint was based on unwarranted inferences about interpretation of disputed labeling terms). Likewise, there is no allegation that this statement is false, thus bringing it within the ambit of true statements that fail to satisfy the "reasonable consumer" standard. *Hadley*, 243 F. Supp. 3d at 1093. Indeed, the FAC affirmatively acknowledges that toxins are, in fact, present in coffee beans. FAC ¶ 30.

*Second*, the labels truthfully state that the Products contain "BRAIN OCTANE OIL," an ingredient derived from highly refined coconut oil. *See* FAC ¶ 14, 16, 18. The labels go on to state that consuming this ingredient helps result in "fewer cravings," "curb[] snack attacks," and "power your brain." *Id*. The FAC alleges that this language is misleading because the Products contain saturated fat. FAC ¶ 32, 34. But no reasonable consumer would interpret the phrase "BRAIN OCTANE OIL" to mean "absence of saturated fat." Indeed, this speculative assertion is particularly strained because the very claim challenged *identifies the food as containing oil, which itself consists principally of fat, as among its principal ingredients*. Moreover, the statement "BRAIN OCTANE OIL" appears consistently beside a prominent labeling statement that the Products also contain

1   "GRASS-FED BUTTER."

2       So, it is utterly implausible to allege that consumers interpret an express

3   reference to a fat-rich ingredient like oil, alongside another express reference to

4   "GRASS-FED BUTTER," as communicating a message that the Products are low

5   in fat. *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014)

6   (finding that it was "utterly implausible that [plaintiff] or reasonable consumers

7   would see an undisputedly true statement about [sugar or protein] and then draw

8   conclusions about other totally unrelated nutritional characteristics…or conclude

9   the Products 'made only positive contributions to a diet…'").

10      The "reasonable consumer" standard assumes, properly, that food purchasers

11  exercise common sense when evaluating statements on food labels. *Brown v.*

12  *Starbucks Corp.*, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) (applying

13  "common sense" standard to interpretation of food label); *Weiss v. Trader Joe's*

14  *Co.*, 2018 WL 6340758, at *5 (C.D. Cal. Nov. 20, 2018) (dismissing challenge to

15  labeling of characteristics of bottled water as contrary to "common sense"), *app.*

16  *docketed*, No. 19-55841 (9th Cir. July 24, 2019). Here, common sense dictates that

17  when a "reasonable consumer" sees a product prominently labeled as containing

18  butter and oil as among its chief ingredients, they do not assume that the food is

19  low in fat. Plaintiff's FAC should be dismissed accordingly.

20  **C.    Plaintiff's Allegations Regarding Specific Claims Are Barred by The
        Prior Substantiation Doctrine**

21

22      While Plaintiff attempts to dress the FAC as a challenge to Bulletproof's

23  labeling as misleading or unauthorized, embedded in the FAC is a claim that

24  Bulletproof's marketing is unsubstantiated. Lack of substantiation is not a

25  cognizable theory under California's UCL and CLRA, however, and Plaintiff's

26  FAC should be dismissed as a matter of law to the extent it is based on any alleged

27  failure by Bulletproof to provide substantiation for its marketing that is, in

28  Plaintiff's view, adequate.

It is "firmly established law in California" that neither the UCL nor the CLRA vest a plaintiff with a private right of action to require manufacturers to substantiate their advertising claims. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017); *see also Engel v. Novex Biotech, LLC*, 689 F. App'x 510 (9th Cir. 2017) ("Neither California's [UCL] nor its [CLRA] provides consumers with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws"); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) ("Although the FDCA requires manufacturers to have substantiation for their structure/function claims, California law does not allow private plaintiffs to demand substantiation for advertising claims…Instead, a private plaintiff bears the burden of producing evidence to prove that the challenged statement is false or misleading").

Instead, pursuant to Cal. Bus. & Prof. Code § 17508, only prosecuting authorities may require substantiation. *Kwan*, 854 F.3d at 1094. "The purpose of allowing only prosecuting authorities, and not private persons, to seek substantiation of advertising claims under Cal. Bus. & Prof. Code § 17508 is to 'prevent undue harassment of advertisers' and provide 'the least burdensome method of obtaining substantiation for advertising claims.'" *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) (citations omitted).

Applying these standards, courts routinely dismiss consumer class actions as a matter of law at the pleading stage where the plaintiff raises an improper challenge to the defendant's alleged failure to substantiate its advertising claims, and the Ninth Circuit upholds these dismissals. *See, e.g.*, *Kwan*, 854 F.3d at 1097 (affirming dismissal of complaint where plaintiff raised substantiation challenge and failed to allege "specific facts pointing to actual falsehood"); *Engel*, 689 F. App'x at 510–511 (same); *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) (dismissing complaint where plaintiff's allegations

intimated lack of substantiation and not outright falsity) ("In sum, each of these articles suggests that some of Defendant's representations might lack substantiation, but they contain no allegations regarding Defendant's conduct or its products, and certainly no indication that the representations upon which Plaintiffs reputedly relied were false"); *Fraker v. Bayer Corp*., 2009 WL 5865687, at \*8 (E.D. Cal. Oct. 6, 2009) (dismissing complaint because "there is no private remedy for unsubstantiated advertising" and because plaintiff alleged only that defendant had "no reasonable basis, consisting of competent and reliable scientific evidence to substantiate" its health-benefit claim related to "WeightSmart" multivitamin).

Plaintiff's FAC here falls squarely within this body of law. The FAC alleges, in particular, that the labeling claims "fewer cravings," "fuel to sustain your body and mind," and "Brain octane oil powers your brain and curbs against snack attacks," misled reasonable consumers into believing they were purchasing a product "beneficial for their health and that will assist in weight loss…" FAC ¶¶ 76-78. However, nowhere does the FAC allege these statements *are false* and that Bulleproof's Products do not, in fact, result in "fewer cravings," etc. *See generally* FAC; *Kwan*, 854 F.3d at 1097 (plaintiff must allege "specific facts pointing to actual falsehood"). Instead, the FAC makes reference to a handful of scientific studies addressing cholesterol and cardiovascular disease, and assumes without support that the "fewer cravings" and other claims carried on the products lack scientific substantiation. FAC ¶¶ 78–82.

Because Plaintiff's UCL and CLRA claims are premised on an explicit and inferred lack of substantiation of Bulletproof's claims, the FAC must be dismissed as a matter of law. *Kwan*, 854 F.3d at 1094. Indeed, regardless of how she attempts to frame her FAC, it is not Plaintiff's role, as a private citizen, to circumvent Section § 17508's reservation of substantiation claims to governmental authorities and require that Bulletproof provide her with backup for its advertising claims. *Id.*

**D.     Plaintiff Fails to Allege that the Products Are Misbranded Under the FDCA**

The FAC further alleges that certain challenged statements purport to violate federal laws regulating both foods and drugs, rendering these statements "unlawful" under the UCL. *See, e.g.,* FAC ¶¶ 33, 62, 71, 98–103. The regulations the FAC relies on, however, are either inapplicable to the Bulletproof's Cold Brew Coffee products ("drug" regulations) or do not bar the statements carried on the products (food regulations). Thus, these allegations fail to state a claim for relief on the merits. *See MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014) ("[T]o state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation.").

**1.     The challenged labeling does not render the products an "Unapproved New Drug"**

The FAC's contention that Bulletproof Coffee—a cold brew coffee blended with oil and grass-fed butter—is a "drug" subject to the FDA's comprehensive drug labeling regulations, FAC ¶¶ 38–49, is unsupported and belied by the plain language of the same statutes, regulations, and FDA warning letters, upon which the FAC relies.

As a threshold matter, Plaintiff's "unapproved new drug" claim is brought pursuant to the UCL, and accordingly, Plaintiff must allege reliance on the statements she claims convert Bulletproof's coffee into a "drug." *See supra* Section IV(A). Because Plaintiff fails to allege reliance on any statements carried on Bulletproof's website, *see id*., these Website Statements cannot form the basis of her "unapproved new drug" claim. *Id.*

But even assuming the Website Statements were relevant to whether Bulletproof's Cold Brew Coffees are "drugs," none of these statements or those carried on the products' labels contain the type of disease-related claims that the FDA's definition of "drug" requires. The definition of what constitutes a "drug" for purposes of FDA regulation is set forth in 21 U.S.C. § 321(g)(1). Relevant here, the

term "drug" means "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease…" (§ 321(g)(1)(B)), or "articles (other than food) intended to affect the structure or any function of the body…" (§ 321(g)(1)(C)). *Id.* A "stimulant" is a sub-category of "drugs" that "restore mental alertness or wakefulness during fatigue or drowsiness." FAC ¶ 32; 21 C.F.R. § 340.3.

Neither the statements carried on Bulletproof's Products, nor those presented on its website (assuming the Website Statements are relevant), bring the Products into the purview of this definition. First and foremost, Bulletproof's labeling and website advertising does not in any way indicate that the Products are "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease…" 21 U.S.C. § 321(g)(1)(B). Indeed, none of the statements Plaintiff alleges support her "unapproved new drug" claim in Paragraph 38 of the FAC reference any disease (or its diagnosis, cure, mitigation, treatment, or prevention) whatsoever. *See generally* FAC. Accordingly, Bulletproof's Products are not "drugs" subject to the FDA's drug regulatory scheme. *Compare Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 335 (2d Cir. 1977) (high-dose vitamins A and D were not "drugs" because product labels did not represent vitamins were effective in the cure or treatment of disease), *with Whitaker v. Thompson*, 353 F.3d 947, 949–50 (D.C. Cir. 2004) (saw palmetto extract product label that stated it could improve symptoms associated with benign prostatic hyperplasia constituted "drug claim" under 21 U.S.C. § 321(g)(1)); *U.S. v. Writers & Research, Inc.*, 113 F.3d 8, 10–11 (2d Cir. 1997) (product label that claimed to be a "non-toxic treatment" for cancer, AIDS, and other chronic diseases constituted a "drug claim" under 21 U.S.C. § 321(g)(1)).

The sole support Plaintiff proffers for this "unapproved drug" allegation is a series of FDA warning letters. *See* FAC ¶ 39, Ex. 1. These warning letters offer Plaintiff no support, however, because each addressed either non-food items subject to the second prong of FDA's definition of "drug" ("articles (other than food)

1    intended to affect the structure or any function of the body of man or other

2    animals."), or circumstances in which the challenged labeling made specific

3    reference to a given disease. *Id.* (emphasis added).

4           For example, while the FDA determined that bulk caffeine powder

5    constituted a "drug" under 21 U.S.C. § 321(g)(1)(C) because the caffeine powder

6    was intended to affect the structure or function of the body, FAC Ex. 1 (ALV

7    Supplement Direct Warning Letter), this sub-section simply does not apply to

8    Bulletproof's Products as the Products are "food." *See* 21 U.S.C. § 321(g)(1)(C)

9    (sub-section applies only to "articles (other than food)"); 21 U.S.C. § 321(f) ("The

10   term 'food' means…articles used for food or drink for man…"). Likewise, while

11   the FDA determined that a "BrainAlert" product containing various substances such

12   as dimethylaminoethanol (DMAE), gotu kola, huperzine A, and Vitamin B3

13   constituted a "drug" pursuant to § 321(g)(1)(B), it did so because the product

14   labeling made reference to a number of "diseases," including depression, ADD, and

15   anxiety. FAC Ex. 1 (BrainAlert, LLC Warning Letter); *see also* FAC Ex. 1

16   (GnuPharma Corp. Warning Letter) (GnuPharma capsules were "drugs" where

17   marketing indicated products could aid with pain, inflammation, allergies, anxiety,

18   drug and other addictions, etc.). Bulletproof makes no similar "disease" claims.

19          Thus, nothing on Bulletproof's Product labeling gives rise to a plausible

20   claim that the Products are "drugs." And because the Products are not "drugs," they

21   likewise do not qualify as "stimulants." *See* 21 C.F.R. § 340.3 ("stimulant" is a sub-

22   category of "drug"). FAC ¶¶ 32–35. Plaintiff's claims based on these theories

23   should be dismissed accordingly.

24          **2.    Bulletproof does not make any unauthorized nutrient content
                    claims**

25
     The Products contain 0g of sugar per serving and bear a label statement

26   accurately reflecting this fact. The Bulletproof Cold Brew Coffee + Collagen

27   Protein product also bears a statement that it contains 15g of protein derived from

28

collagen. Plaintiff alleges that the "0g Sugar" and "15g Collagen" statements are nutrient content claims subject to 21 C.F.R. § 101.13, thus requiring the Products to separately disclose that the Products contain levels of fat and/or saturated fat above the levels specified in 21 C.F.R. § 101.13(h)(1). FAC ¶¶ 51–52, 62–64. The use of the "0g Sugar" and "15g Collagen" label statements, however, do not constitute nutrient content claims.

The "0g Sugar" and "15g Collagen" statements do not "characterize" the level of sugar or collagen in the food. So, they are not properly classified as nutrient content claims and, thus, do not require the disclaimers regarding fat content referred to in § 101.13(h)(1). The FDCA specifically defines nutrient content claims as a "claim [] made in the label or labeling of the food which expressly or by implication (A) *characterizes* the level of any nutrient." 21 U.S.C. § 343(r)(1)(A) (emphasis added). FDA regulations implementing the FDCA are in accord, defining nutrient content claims as those that "expressly or implicitly *characterize[]* the level of a nutrient" in food. 21 C.F.R. § 101.13(b) (emphasis added).

Here, the "0g Sugar" and "15g Collagen" statements do not "characterize the level" of sugar or collagen in the products; rather, they are simply accurate factual statements of the amount of sugar and collagen per serving in the respective Products. Indeed, FDA regulations identify similar statements like "100 calories" and "5 grams of fat" as examples of those that do not "characterize the level of the nutrient in the food." *See* 21 C.F.R. § 101.13(i)(3). Subsection 101.13(i)(3) also specifies that for such statements that do not characterize the level of a nutrient, "no disclaimer is required." *Id.* So, the "0g Sugar" and "15g Collagen" statements are not subject to the "disclaimer" requirements of 21 C.F.R. § 101.13(h)(1), because they are not nutrient content claims. 21 C.F.R. § 101.13(i)(3).

Related FDA authority enforces this distinction between claims that "characterize" the level of nutrient in a food and those that simply state the "amount" of a nutrient, citing the kinds of claims identified in § 101.13(i)(3) as

examples. *See* Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302–01, 2310 (proposed Jan. 6, 1993) ("[B]ased on the comments and its review of the 1990 amendments, FDA finds that there are some circumstances *in which an amount claim cannot be considered to characterize in any way* the level of a nutrient in a food. For example, the statement '100 calories' or '5 grams of fat' on the principal display panel of a food would be a *simple statement of amount that, by itself, conveys no implied characterization of the level of the nutrient*. As long as such a statement is not false or misleading, it can appropriately be included in food labeling. Therefore, FDA is providing in new § 101.13(i)(3) that *an absolute statement of amount* may be made without a disclaimer") (emphases added); *see also* Food Labeling; Requirements for Nutrient Content Claims for Dietary Supplements of Vitamins, Minerals, Herbs, and Other Similar Nutritional Substances, 58 Fed. Reg. 33731-01, 33740 (proposed June 18, 1993) (explaining that "101.13(i)(3) provides for amount or percentage statements that do not characterize the level of a nutrient (including those nutrients without an RDI or DRV) and *that are therefore not nutrient content claims* but rather state amounts present.") (emphasis added).

Thus, FDA interpretive guidance corroborates the language of the statute in that factual statements regarding amounts do not "characterize the level" of a nutrient, and so are not regulated as nutrient content claims.

### 3.   Bulletproof does not make any unauthorized health claims

Plaintiff's contention that the Products bear "unauthorized health claims," FAC ¶¶ 65-70, is also unsupported.

*First*, a health claim is "any claim made on the label or in labeling of a food …that expressly or by implication…characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). Here, the sole

statement that Plaintiff alleges constitutes a health claim ("GRASS-FED BUTTER from grass-fed cows is higher in butyrate, a fatty acid that aids in digestion as well as Vitamin K2, which helps push the calcium to your bones—not your arteries" FAC ¶ 66) does not appear on the Product label and is therefore not subject to FDA's regulations governing food "labels." As the FAC alleges, this statement appears only on Bulletproof's website.[3] *Id.* The FDCA is clear that the term "label" does not include websites. 21 U.S.C. 321(k) ("The term 'label' means a display of written, printed, or graphic matter upon the immediate container of any article…"). Further, the definition of "labeling" means materials that "accompany" the food label, and does not include websites. *See* 21 U.S.C. 321(m) ("The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143 (N.D. Cal. 2013) (statements made on the www.fritolay.com website do not "accompany" the products such that they can be classified as "labeling" under the FDCA).

*Second*, to constitute a health claim, a statement must reference both: (1) a substance and (2) a specific disease or health-related condition. *See* FDA, Guidance for Industry: A Food Labeling Guide, at 81 (Jan. 2013), https://www.fda.gov/media/81606/download. Plaintiff alleges that the challenged statement constitutes a health claim relating to heart health (FAC ¶¶ 66–70), however, a plain reading of the statement reveals that Bulletproof makes no reference to "heart health" whatsoever. Indeed, the Bulletproof statement does not reference any specific disease or health-related condition at all. Further, the type of "health-related conditions" the regulation covers are specific ones like lung cancer, heart disease, or high blood pressure. *See id.* at H4-H6 (listing examples of diseases and health-related conditions). Here, a statement asserting that Vitamin K2 "helps

---

[3] Plaintiff also lacks both Article III and statutory standing to challenge statements originating from Bulletproof's website which do not appear on the Product label. *See, supra,* Section IV(A).

push [] calcium to [your] bones" is too vague and general to relate to a "health-related condition." *See also Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822, at *8 (N.D. Cal. Jan. 6, 2014) (generalized statements such as "protective antioxidants" are too general to relate to a "health-related condition" and do not violate FDA health claim regulations).

## E. The FAC Fails to Allege Facts Sufficient to Satisfy Rule 9(b)

Rule 9(b) imposes a heightened pleading standard requiring that "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This heightened standard applies to UCL and CLRA claims premised on alleged fraudulent conduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s particularity requirement applies to these state-law causes of action [including UCL and CLRA claims]"). So, it is well-established that Rule 9(b) applies to complaints asserting violations of the UCL and CLRA, where the challenged conduct involves alleged misrepresentations or omissions on the labeling of food or beverage products. *See Arabian v. Organic Candy Factory*, 2018 WL 1406608, at *3 (C.D. Cal. Mar. 19, 2018) (Wright, J.) (holding that claims alleging misleading food labeling "are grounded in fraud" and dismissing for failure to plead facts to satisfy Rule 9(b)). To satisfy Rule 9(b), a plaintiff must allege facts sufficient to identify "'the who, what, when, where, and how of the misconduct charged,' as well as '*what is false* or misleading about the purportedly fraudulent statement, and *why it is false*.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (emphasis added).

In this case, Rule 9(b) thus requires—at a minimum—that the FAC plead specific facts as to: (1) Plaintiff's reliance (*i.e.*, the "what"); and (2) her basis for believing that the alleged misleading labeling is false (*i.e.*, the "how" and "why"). *See In re 5-hour Energy Mktg. and Sales Practices Litig.*, 2014 WL 5311272, at *16 (C.D. Cal. Sept. 4, 2014) ("Plaintiffs here have similarly failed to indicate what particular statements (in advertisements or otherwise) they relied on when

purchasing [defendant's product]. As a result, their claims do not pass muster under Rule 9(b).") (collecting cases); *Arabian*, 2018 WL 1406608, at *4 ("Plaintiff does not adequately set forth why the statements on the packaging of the Class Products are false."). The FAC fails both these standards.

*First*, as described in detail in Section IV(A), above, the FAC contains no allegations of reliance on the Website Statements. So, the FAC does not contain the kind of factual specificity regarding reliance that Rule 9(b) mandates. *In re 5-hour Energy*, 2014 WL 5311272, at *16; *Jones v. Nutiva, Inc.*, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) ("[A]lthough the complaint includes different labels for Defendant's [products], it does not state that Plaintiff [] relied on any of them. Such incomplete allegations do not satisfy Rule 9(b)").

*Second*, the FAC fails to allege "why" Plaintiff believes the Products' labeling is false and, if so, "how" she came to that conclusion. *Arabian*, 2018 WL 1406608, at *4. The FAC contains nothing more than a boilerplate allegation that "Plaintiff would not have purchased Bulletproof Cold Brew products had she known that they were unlawfully labeled, misbranded, contained false claims, and an unapproved new drug." FAC ¶ 83. But this allegation is just a recitation of the purported legal basis for the UCL and CLRA claims: It does not explain why Plaintiff considers the Products' labeling to be false, or how she came to that conclusion. The FAC is particularly lacking in this regard, because the statements that Plaintiff otherwise challenges are, in fact, true. *See supra* Section II(A).[4] The FAC should be dismissed accordingly for failure to satisfy Rule 9(b).

## V.    CONCLUSION

For the foregoing reasons, Bulletproof 360, Inc. respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

---

[4] The FAC also fails to satisfy Rule 9(b) because it does not identify, among the seven varieties of Products, which specific one(s) Plaintiff purchased. FAC ¶¶ 83-87. *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (dismissing fraud-based claims for failure to satisfy Rule 9(b) where plaintiff did not allege which specific products she purchased).

1

2
DATED: August 19, 2019          **PERKINS COIE LLP**

3
By: */s/ Charles Sipos*

4
Charles Sipos, *pro hac vice*
CSipos@perkinscoie.com

5
Mica D. Klein, *pro hac vice*
MicaKlein@perkinscoie.com

6
Jasmine W. Wetherell, Bar No. 288835
JWetherell@perkinscoie.com

7
*Attorneys for Defendant*

8
*Bulletproof 360, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:19-cv-04409-ODW-SK
MEMO. OF POINTS & AUTHORITIES RE:
DEFENDANT'S MOTION TO DISMISS FAC

1

## **CERTIFICATE OF SERVICE**

2        The undersigned certifies that on August 19, 2019, I caused to be filed via the

3  CM/ECF system a true and correct copy of the foregoing document and that service

4  of this document was accomplished on all parties in the case by the CM/ECF

5  system.

6                               */s/ Mica Klein*

7                               Mica Klein, *pro hac vice*
MicaKlein@perkinscoie.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28