O

# United States District Court
# Central District of California

| | |
|---|---|
| TIFFNI ALTES,<br><br>        Plaintiff,<br><br>    v.<br><br>BULLETPROOF 360, INC.,<br><br>        Defendant. | Case No. 2:19-cv-04409-ODW (SKx)<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION TO DISMISS [29]** |

## I.    INTRODUCTION

Defendant Bulletproof 360, Inc. ("Bulletproof") moves to dismiss claims in Plaintiff Tiffni Altes's First Amended Complaint ("FAC") alleging that Bulletproof presents misleading health claims on its product's label.  (*See generally* Mot. to Dismiss ("Mot."), ECF No. 29.)  For the reasons that follow, the Court **GRANTS IN PART, AND DENIES IN PART,** Bulletproof's Motion to Dismiss ("Motion").[1]

## II.    BACKGROUND

Bulletproof manufactures, markets, distributes, and sells Bulletproof Cold Brew Coffee ("Coffee Product").  (FAC ¶ 3, ECF No. 26.)  Altes alleges that she purchased

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Bulletproof's Coffee Product "at least twice in the last two years." (FAC ¶ 83.)  In making her purchase, Altes relied on the label as a whole as well as the following specific claims: "Certified Clean Coffee," "Brain Octane Oil," "Fuel to Sustain Your Mind and Body," "0g Sugar," "Lasting Energy," "Fewer Cravings [¶] Brain Octane Oil Powers Your Brain and Curbs Snack Attacks," and "It's clean coffee certified to be free of 27 energy-sapping toxins, plus grass-fed butter and Bulletproof Octane Oil—extracted from the most potent part of the coconut—to power your brain and body and give you steady, all day energy."  (FAC ¶ 86.)

The labels were revised on October 2018 and the following allegedly deceiving claims still remain on the labels: "Brain Octane Oil," "Fuel to Sustain Your Mind and Body," 0g Sugar," "Lasting Energy," "Fewer Cravings [¶] Brain Octane Oil Powers Your Brain and Curbs Snack Attacks."  (FAC ¶¶ 17, 18.)  Altes also lists similar health claims present on Bulletproof's website, the link for which is referenced on the label of the Coffee Product.  (FAC ¶ 21.)  Altes alleges that these claims are deceptive and misleading and that, had she known the Coffee Product was unlawfully labeled or misbranded, she would not have purchased the product.  (FAC ¶¶ 27–37, 83.)

Altes further alleges that Bulletproof ignores the Food and Drug Administration ("FDA") regulations in marketing its Coffee Product, makes health benefit claims that should require FDA new drug approval, and fails to comply with FDA regulations governing nutrient content claims and health claims.  (FAC ¶¶ 6–7, 50–70.)  For example, Altes argues that Bulletproof should have complied with labeling requirements for over-the-counter stimulant drug products because of its claims to boost energy.  (FAC ¶¶ 46–49.)  Bulletproof also allegedly deceives consumers into believing that the Coffee Product is a low-calorie item with its "zero sugar" and "0g sugar" claims.  (FAC ¶¶ 50–61.)  Further, Altes alleges that the FDA regulations disqualify the Coffee Product from making any health claim at all because of the excess saturated fats content.  (FAC ¶¶ 65–70.)

On May 21, 2019, Altes brought suit against Bulletproof on behalf of herself

and all others similarly situated alleging violations of California's (1) Unfair Competition Law ("UCL") and (2) Consumer Legal Remedies Act ("CLRA"). (*See* Compl. ¶¶ 63–84, ECF No. 1.) After Bulletproof moved to dismiss Altes's initial Complaint, Altes filed her FAC. (*See* Mot. to Dismiss, ECF No. 22; FAC.) Bulletproof now moves to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Mot.)

### III.  LEGAL STANDARD

#### A.  12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) examines the court's subject matter jurisdiction. An Article III federal court lacks subject matter jurisdiction over a suit brought by a plaintiff without Article III standing as such a suit is not a "case or controversy." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

To establish Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact, (2) [that is] fairly traceable to the challenged conduct of the defendant, and (3) [that is] likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). The injury-in-fact requirement calls for a plaintiff to demonstrate that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*

When a party moves to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

#### B.  12(b)(6)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must

satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Accusations of fraud require a plaintiff to plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that the complaint identify the "who, what, when, where, and how" of the fraudulent activity, "as well as what is false or misleading about" it, and why it is false. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV. DISCUSSION

Bulletproof first argues that Altes lacks standing to bring any claim premised on statements on Bulletproof's website. (Mot. 1.) Next, Bulletproof asserts several reasons why the label is not misleading and does not violate any FDA regulation. (Mot. 2.) Finally, Bulletproof asserts that Altes fails to satisfy the heightened pleading standard of 9(b). (Mot. 2–3.)

### A. Standing For Statements on the Website

Bulletproof first argues that Altes lacks standing to raise any claims regarding the statements published on its website ("Website Claims") as Altes fails to allege that she relied on the Website Claims when purchasing the Coffee Product. (Mot. 9–12.)

To have standing, plaintiffs must show an injury-in-fact causally linked to the alleged misrepresentations or omissions. *Lujan*, 504 U.S. at 560–61. Therefore, plaintiffs must plausibly allege actual reliance on defendant's purported misrepresentations in purchasing the product. *See Joseph v. Kraft Heinz Foods Co., Inc.*, 691 F. App'x 850, 850 (9th Cir. 2017) ("The district court properly dismissed Joseph's claims [ ] because Joseph failed to allege facts sufficient to show that he relied on the [misrepresentations] in making his purchases."); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322–323 (2011) (stating that, to establish standing to bring a UCL claim, a plaintiff must allege economic injury and reliance on defendant's alleged misrepresentation).

Here, Altes alleges that she purchased the Coffee Products on at least two separate occasions at Whole Foods Market. (FAC ¶ 83.) However, Altes does not allege that she viewed the Website Claims prior to making her purchases let alone relied on them in making her purchase. In fact, Altes concedes that "Plaintiff did [not] read and rely on every single deceptive claim made by Defendant." (Opp'n to Mot. ("Opp'n") 14, ECF No. 32.)

Altes raises California state precedent and asserts that she need not point to specific advertisements to have standing to bring a false advertising claim. (Opp'n

15–17.) California state courts have held that plaintiffs may bring claims premised on widespread advertising or mass marketing campaign. *In re Tobacco II*, 46 Cal. 4th 298, 327 (2009); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1050 (N.D. Cal. 2014). However, Altes does not raise claims based on Bulletproof's mass marketing or widespread advertising as in *In re Tobacco II* or *Opperman*. Instead, she brings claims based on statements that consumers would see only if they searched Bulletproof's website. Thus, the Court does not find that the relaxed standard for standing applies in this instance.

As Altes does not claim that she saw the Website Claims prior to her purchase, she could not have been induced into purchasing the Coffee Product by the Website Claims. *See McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB (OPx), 2013 WL 6403073, at *8 (C.D. Cal. Jul. 12, 2013) ("Since Plaintiff has failed to allege actual reliance on the statements on [the] website, Plaintiff lacks standing to challenge these statements under the UCL, FAL, and CLRA.") Therefore, as her injuries could not have resulted from the Website Claims, Altes lacks standing to raise claims premised on them. The Court **DISMISSES** her claims to the extent that they are based on the Website Claims. The Court permits leave to amend if Altes can allege reliance on the Website Claims in purchasing the Coffee Product.

### B. Fraudulent Labeling Allegations

Next, Bulletproof moves to dismiss Altes's UCL claim under the fraudulent and unfair prongs and her CLRA claim, as no reasonable consumer would be misled by the labeling. (Mot. 12.) Alternatively, Bulletproof moves to dismiss the claims because Altes fails to allege her claim with specificity. (Mot. 12.)

*1. Reasonable Consumer Standard*

Bulletproof argues that Altes's UCL claim under the fraudulent and unfair prongs and the CLRA claim lack merit as no reasonable consumer would be misled by the labeling. While Altes asserts that reasonable consumers seeking products that aid

1  in weight loss may be misled into purchasing the Coffee Product despite its high
2  content of saturated fats. (Opp'n 4.)

3  "[C]laims under the California consumer protection statutes are governed by the 'reasonable consumer' test," under which the plaintiff "must show that members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted). The plaintiff must establish that there is a "probability," not a "mere possibility," that a "significant portion of the general consuming public or of targeted consumers," rather than a few consumers, could be misled. *Id.* However, as "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer," courts should not dismiss claims when the labeling "has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).

Altes first asserts that Bulletproof deceives its consumers into purchasing its Coffee Product, which is priced higher than the market price of similar beverages, by claiming that the Coffee Product is "made from exceptionally high-quality ingredients compared to its toxin-filed competitors." (Opp'n 2–3.) However, representations regarding toxins are only alleged to be on the website. The current label does not make any representations about the toxins in competing coffee beverages. (*See* FAC ¶¶ 18, 20; Opp'n 2–3.) To the extent Altes seeks damages for previous labeling, only one alleged representation is relevant: "Bulletproof is tested & certified free of 27 toxin." (FAC ¶¶ 16, 86.) The Court finds this representation vague. The label does not indicate that other coffee drinks have toxins or that its ingredients are of superior quality. The Court does not find that the one statement has a capacity, likelihood, or tendency to deceive the public into purchasing the Coffee Product over a competitor for the sole reason that the competitor has toxins whereas Bulletproof does not. Accordingly, the Court **DISMISSES without leave to amend** both the UCL and

CLRA claims to the extent that they rely on this theory of consumer misrepresentation.

Next, Altes asserts that reasonable consumers seeking products that aid in weight loss may be misled into purchasing the Coffee Product despite its high content of saturated fats. (Opp'n 4.) The following claims are present on the most current packaging of the Coffee Product: "fewer cravings [¶] brain octane oil powers your brain and curbs snack attacks[,]" "0g Sugar[,]" and "lasting energy [¶] zero sugar means zero sugar crashes" (FAC ¶¶ 18, 20.)

The Ninth Circuit affirmed a district court's decision not to dismiss fraudulent labeling claims in *Williams*, 552 F.3d 934. In *Williams*, at issue was a fruit juice snack product in which the two most prominent ingredients were sugar and corn syrup, and the only fruit or juice content was white grape juice from concentrate. *Id*. There, the product: (1) was named "Fruit Juice Snacks"; (2) had images of fruits such as oranges, peaches, strawberries, and cherries on the box; (3) stated that it was made with "fruit juice and other natural ingredients," and (4) stated that it was "one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy." *Id.* at 936, 939. The Ninth Circuit found that a reasonable consumer *could* be misled into thinking that the product contained significant fruit and affirmed the district court's decision not to dismiss the claims.

Similarly, the Court finds that Altes raises a logical concern that a reasonable consumer would be misled into thinking that the Coffee Product would promote a healthy diet, given the claims on its label. For instance, reasonable consumers may not expect that one bottle of the Coffee Product contains 40% of the daily recommended intake of saturated fats.

In contrast, Bulletproof asserts that a reasonable consumer would not be deceived by its labeling and compares the instant matter to *Painter v. Blue Diamond Growers*, 757 F. App'x 517 (9th Cir. 2018). (Mot. 13; Reply 2–3, ECF No. 38.) In *Painter*, the plaintiff alleged only that the term "Almondmilk" deceived him into

believing that the product had the same nutritional value as cow's milk; however, he did not allege that the nutrition label was false or misleading. *Painter v. Blue Diamond Growers*, No. CV 17-02235-SVW (AJWx), 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th Cir. 2018). Thus, the facts in the instant matter are distinguishable as the claims on the Coffee Product's label itself could lead a reasonable consumer to believe the product promoted healthy eating.

Bulletproof similarly analogies the facts here to those in several Northern District of California cases in which courts held that plaintiffs could not reasonably be misled that a "diet" soda would result in weight loss without other lifestyle changes. (Mot. 13; Reply 3 (citing *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-CV-05921-WHO, 2018 WL 3995832, at *3–4 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F.3d 1225 (9th Cir. 2019); *Becerra v. Coca-Cola Co.*, No. C 17-05916 WHA, 2018 WL 1070823, at *3–4 (N.D. Cal. Feb. 27, 2018)).) Though the Court concurs with those decisions, the present facts are again distinguishable. It is obvious that a "diet" soda is simply a less caloric version of a regular soda, and not a diet product the consumption of which would contribute to weight loss absent other lifestyle changes. Here, in contrast, a reasonable consumer could infer from the labeling that the product would aid in weight loss. The labels on the Coffee Product indicate that it has zero sugar and would curb the consumer's appetite and prevent the consumer from snacking. Thus, the Court finds that the Coffee Product's labeling has a capacity, likelihood, or tendency to deceive or confuse the public.

Accordingly, the Court **DENIES** the Motion based on this theory of liability as Altes has raised a reasonable argument that consumers could be hoodwinked into purchasing the Coffee Product.

    *2.    Failure to State a Claim*

Bulletproof also moves to dismiss the UCL claim under the fraudulent and unfair prongs and the CLRA claim because Altes fails to allege how or why reasonable consumers were misled by these claims. (Mot. 12.) The Court addresses

the sufficiency of Altes's pleading as to all claims *infra* and thus, reserves the arguments for that discussion.

**C.     Unlawful Labeling Allegations[2]**

Bulletproof moves to dismiss Altes's claim that the Coffee Product's label violates FDA regulations. (Mot. 2.) Bulletproof asserts that the FDA regulations it allegedly failed to follow do not apply to the Coffee Product. (Mot. 2, 18–24.) Specifically, Bulletproof argues (1) the labeling does not render the products an "unapproved new drug," (2) Bulletproof does not make any unauthorized nutrient content claims, and (3) Bulletproof does not make any unauthorized health claims.

As discussed above, Altes lacks standing to pursue claims as to the Website Claims. Accordingly, the Court addresses only whether the representations made on the label violate FDA regulations and are therefore unlawful.

*1.     Unapproved New Drug*

First, Altes claims that Bulletproof violated FDA's labeling regulations because the Coffee Product is subject to and fails to comply with the drug labeling regulations. Bulletproof moves to dismiss this claim asserting that the Coffee Product is not a drug as defined by 21 U.S.C. § 321(g)(1); Altes asserts that it is. (Mot. 18–20; Opp'n 8–9.)

Section 321(g) provides the definition of "drug," and includes, among other things, that a "drug" is any "article[] intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," 21 U.S.C. § 321(g)(1)(B), or "article[] (other than food) intended to affect the structure or any function of the body," *id.* § 321(g)(1)(C). "The drug definition is [normally] to be given a liberal interpretation in light of the remedial purposes of the legislation." *Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 336 (2d Cir. 1977) (citing *United States v. An Article of*

---

[2] Bulletproof also argues that, to the extent Altes challenges the validity of certain health claims, Altes's demand for "prior substantiation" is non-actionable. (Mot. 2.) Altes asserts that she is not demanding that Bulletproof substantiate its health claims; she is only alleging that the representations are false or misleading. (Opp'n 5–6.) Accordingly, the Court does not dismiss any claims on this basis.

*Drug...Bacto-Unidisk*, 394 U.S. 784, 792, 798 (1968)).

The Coffee Product is a "food" under section 321. 21 U.S.C. § 321(f) ("The term 'food' means (1) articles used for food or drink for man or other animals . . . ."). As such, it is excluded from the definition of "drug" under section 321(g)(1)(C) and the Court analyzes whether the Coffee Product is a "drug" under section 321(g)(1)(B).

The vendor's intent is a key element in determining whether a product is a drug. *See Nat'l Nutritional Foods Ass'n*, 557 F.2d at 333; *Allergan, Inc. v. Athena Cosmetics, Inc.*, No. SACV-071316-JVS (RNBx) (Consol.), 2012 WL 12896222, at *6 (C.D. Cal. July 19, 2012). "Vendor intent may be derived or inferred from labeling claims, promotional material, advertising material, oral and written statements." *Allergan*, 2012 WL 12896222, at *6 (citing *U.S. v. Storage Spaces Designated Nos. 8 and 49 Located at 277 East Douglas, Visalia Cal.*, 777 F.2d 1363, 1366 (9th Cir. 1985)).

The Court considers the claims on Bulletproof's labeling to determine its intent: "fewer cravings [¶] brain octane oil powers your brain and curbs snack attacks" and "lasting energy [¶] zero sugar means zero sugar crashes." (FAC ¶¶ 18, 20.) Claims to "power the brain" and "curb snack attacks" do not demonstrate an intent to "diagnos[e], cure, mitigate[e], treat[], or prevent[] disease." Accordingly, the Court does not find that the Coffee Product is a "drug." *See Nat'l Nutritional Foods Ass'n*, 557 F.2d at 335 (stating the dismissal of the claim should be based on the intent of vendor and no evidence supported the defendants' intent that the product treat or cure disease).

As the Coffee Product is not a drug, Bulletproof was not required to comply with FDA regulations pertaining to drugs. Accordingly, the Court **DISMISSES** without leave to amend the UCL unlawful claim to the extent it is based on this theory.

2. *Unauthorized Nutrient Content Claims*

Next, Altes asserts that Bulletproof made unauthorized nutrient content claims in violation of 21 C.F.R. section 101.13 and 21 C.F.R. section 101.60. Bulletproof

moves to dismiss the claim on the basis that it did not make any nutrient content claims and therefore, related regulations do not apply to its product. (Mot. 20–22.)

A nutrient content claim is one that "expressly or implicitly characterizes the level of a nutrient" outside of the nutrition facts section. 21 C.F.R. § 101.13; *Hawkins v. Kroger*, 906 F.3d 763, 770–71 (9th Cir. 2018) (discussing *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015)). Bulletproof asserts that its "0g sugar" claims do not characterize the level of a nutrient, but rather indicate accurately the amount of sugar in the product. (Mot. 20–22.) The Ninth Circuit has rejected similar arguments regarding claims of amount of trans fat on labels. *See Hawkins*, 906 F.3d at 770–71 (quoting *Reid*, 780 F.3d at 962) ("'No Trans Fat' was an 'expressed' nutrient content claim because it was '[a] direct statement about the level . . . of [trans fat] in the food.'")). Thus, the Court similarly finds that the claims on the Coffee Product's label were nutrient content claims, therefore subjecting Bulletproof to other labeling regulations. *See* 21 C.F.R. § 101.13(b). Accordingly, the Court **DENIES** Bulletproof's Motion on this basis.

### 3. *Unauthorized Health Claims*

Altes claims that Bulletproof made unauthorized health claims. (Opp'n 10–12.) However, Altes's claims here are premised entirely on Website Claims, which the Court dismissed above, and not on the Coffee Product's label. Accordingly, the Court **DISMISSES** with leave to amend the UCL unlawful claim to the extent it is based on this theory.

### D. Failure to Allege All Claims with Specificity

Finally, Bulletproof moves to dismiss Altes's claims for want of specificity in the allegations regarding fraud. (Mot. 12, 24–25.) Bulletproof argues that Altes fails to allege why she believes the labeling is false and how she reached that conclusion. (Mot. 24.)

Rule 9(b) requires that the complaint identify the "who, what, when, where, and how" of the fraudulent activity, "as well as what is false or misleading about" it, and

why it is false. *Cafasso*, 637 F.3d at 1055 (internal quotation marks omitted). As discussed above, Altes clearly alleges who the parties are, what the misleading statements are, when and where she came across the misleading statements, and how or why the statements are false or misleading. (*See generally* FAC.) Specifically, she alleges that the representations on the label induced her purchase of the item; "[she] was seeking a product that was beneficial to her health" but "she lost money . . . because she purchased products that were detrimental to her health." (FAC ¶ 85.) Accordingly, the Court finds that Altes satisfied the heightened pleading requirements. The Court **DENIES** Bulletproof's Motion on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART,** and **DENIES IN PART,** Bulletproof's Motion to Dismiss (ECF No. 29). Altes may amend her FAC to address the deficiencies identified above within **twenty-one (21) days** from the date of this Order.

**IT IS SO ORDERED.**

March 5, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**